**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

          v.

THOMAS MICHAEL WHITEHEAD,
          *Defendant-Appellee.*

No. 05-50458

D.C. No.
CR-03-00053-
CAS-1

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

THOMAS MICHAEL WHITEHEAD,
          *Defendant-Appellant.*

No. 05-50506

D.C. No.
CR-03-00053-
CAS-1

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
August 16, 2006—Pasadena, California

Submission Vacated September 12, 2006
Resubmitted July 14, 2008

Filed July 14, 2008

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and Jay S. Bybee, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Bybee

**COUNSEL**

Michael J. Raphael and Thomas P. O'Brien, Assistant United States Attorneys; Debra Wong Yang, United States Attorney, Los Angeles, California, for the plaintiff-appellant.

Nina Marino, Kaplan Marino, Beverly Hills, California, for the defendant-appellee.

**OPINION**

PER CURIAM:

Thomas Michael Whitehead sold over $1 million worth of counterfeit "access cards" that allowed his customers to access DirecTV's digital satellite feed without paying for it. The jury convicted him of breaking various federal laws, including the Digital Millennium Copyright Act, which forbids the sale of devices that are designed to "circumvent[ ] a technological measure" that protects copyrighted works. 17 U.S.C. § 1201(a)(2)(A). The district court calculated a Guidelines range of 41 to 51 months, but imposed a more lenient sentence of probation, community service and restitution.

The government appeals, arguing that this below-Guidelines sentence was unreasonable, and Whitehead cross-appeals, claiming that the indictment and jury instructions omitted an element of the crime. Neither party disputes the district court's Guidelines calculation. We deferred submission pending our en banc decision in *United States* v. *Carty*, 520 F.3d 984 (9th Cir. 2008), and now affirm.

## Analysis

**[1] 1.** "One theme" runs through the Supreme Court's recent sentencing decisions: "[*United States* v.] *Booker*[, 543 U.S. 220 (2005),] empowered district courts, not appellate courts . . . . [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing . . . ." *United States* v. *Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) (Sutton, J.). We review sentences for abuse of discretion, and without presuming that outside-Guidelines sentences are unreasonable. *United States* v. *Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis. *Gall* v. *United States*, 128 S. Ct. 586, 597 (2007).

**[2]** We find no abuse of discretion in the district court's conclusion that a substantial amount of community service (1000 hours), a hefty restitution order ($50,000) and five years of supervised release were more appropriate than prison. At the sentencing hearing, the court heard from Whitehead and his father, who told the court how Whitehead repented his crime; how he had, since his conviction, devoted himself to his house-painting business and to building an honorable life; how his eight-year-old daughter depended on him; and how he doted on her. In addition, the court took into account its finding that Whitehead's crime "[di]d not pose the same danger to the community as many other crimes." These are all considerations that the district court may properly take into account. *See* 18 U.S.C. § 3553(a)(1)-(2). The district

court was intimately familiar with the nature of the crime and defendant's role in it, as we are not. The district court could appraise Whitehead's and his father's sincerity first-hand, as we cannot. In short, the district court was "in a superior position" to find the relevant facts and to "judge their import." *Gall*, 128 S. Ct. at 597. The district court didn't abuse its discretion in so doing.

**[3] 2.** Whitehead argues that his conviction under 17 U.S.C. § 1201 must be reversed because the indictment and jury instructions omitted an element of the offense, namely, that the technological measures he circumvented were put in place "with the authority of the copyright owner." *See* 17 U.S.C. § 1201(a)(3)(B) (defining when a technological measure "effectively controls access to a work"). But the indictment quoted and cited section 1201(a)(2)(A), and thereby "adequately apprised the defendant of the charge[ ]"; any mistake here was "minor or technical" and doesn't require reversal. *United States* v. *Severino*, 316 F.3d 939, 943 (9th Cir. 2003) (internal quotation marks and citation omitted). And the jury instructions defined "technological measure" using section 1201(a)(3)(B)'s exact language. Neither the indictment nor the instructions were erroneous.

**AFFIRMED.**

---

BYBEE, Circuit Judge, dissenting in part:

Thomas Whitehead will do no jail time for pirating a million dollars worth of "access cards" and selling them on the internet to persons who used them to steal satellite television service from DirectTV. The advisory Guidelines, after taking into account Whitehead's personal circumstances, called for a sentence of 41-51 months. Whitehead walked with probation, restitution, and community service.

This was not an exercise of discretion so much as an abdication of responsibility. Our substantive review of sentences may be limited after *Gall*, but being deferential does not mean turning a blind eye to an injustice. I respectfully dissent.[1]

I

Whitehead was convicted of selling over 1000 "access cards" that allowed individuals to pirate digital satellite service from DirectTV. The district court estimated that by enabling his customers to watch satellite TV without paying for it, Whitehead stole at least $1 million in profits from Direct TV. Whitehead himself bragged online that he had personally earned over $400,000 from his business. Money earned by stealing from DirectTV was not his only source of utility, however. Whitehead also bragged to his customers that "if anyone is a trooper and likes the danger of this bi[z], it's me."

At Whitehead's sentencing hearing, the district court applied the Guidelines and arrived at an offense level of 24. The court then reduced the sentence by two levels for "acceptance of responsibility," even though Whitehead put the government to its burden and demanded a trial to contest his factual guilt. Thus, the court arrived at a total offense level of 22, resulting in a Guideline range of 41-51 months. In other words, the Guidelines suggested Whitehead should serve at least three years and five months in jail.

The court then further reduced the sentence by two levels because "the crime did not pose the same danger to the community as other crimes," and in light of Whitehead's "post-offense rehabilitation" and his family circumstances. The court tentatively announced that it would reduce the total offense level to 20 and impose a 33-month sentence, with 150

---

[1]I agree with the majority that the indictment and jury instructions properly supported Whitehead's conviction.

hours of community service. The court stated that "a custodial sentence is appropriate." Thus, having accounted for White-head's "acceptance of responsibility," in the form of post-conviction remorse, and his family circumstances, which I discuss in greater depth below, the district court still found that the Guidelines recommended that Whitehead should spend at least two years and five months in jail.

Whitehead then argued that even this sentence was unreasonable when considered in light of the § 3553(a) factors. To support his argument, he presented once again the same evidence that the district court had just acknowledged when it reduced its original guidelines calculation from offense level 24 to offense level 20: his post-offense "rehabilitation," his family circumstances, and the fact the crime was a white-collar crime. The district court then took a brief recess. When she returned, the district judge announced that instead of sentencing Whitehead to serve over three years in prison as suggested by the Guidelines, Whitehead would not go to prison at all. Instead, he would serve 5 years' probation. The district court also sentenced Whitehead to 1000 hours of community service and restitution of $50,000. The government appealed.

II

A

I agree with the Sixth Circuit's eloquent observation that "*Booker* breathe[d] life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them." *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) (discussing *United States v. Booker*, 543 U.S. 220 (2005)). I am less persuaded, however, by the suggestion that the "[o]ne theme" running through the *Booker* line of cases is that the Court has "empowered district courts, [but] not appellate courts." *Id.* Nothing in *Booker*, *Rita*, *Gall*, or our own assimilation of these cases in *Carty*,

suggests that the Supreme Court has taken the courts of appeals out of the business of reviewing sentences. If it had, we could save ourselves a lot of time. On the contrary, in each of these cases the Court has explicitly held that the appellate courts *must* continue to play an important role in the process of ensuring that criminals are punished fairly: we are to "review" each sentence for "reasonableness," under the "abuse of discretion" standard. *Gall v. United States*, 128 S. Ct. 586, 594 (2007) ("[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable' . . . [under] the familiar abuse-of-discretion standard of review."); *id.* at 597 ("[T]he appellate court *must* review the sentence under an abuse-of-discretion standard." (emphasis added)).

There are countless types of district court rulings that we review for abuse of discretion.[2] In none of our cases have we suggested that the "abuse of discretion" standard means that our power of appellate review is illusory. On the contrary, we regularly reverse rulings for abuse of discretion where the law requires us to do so.[3] Deferring to an exercise of a district

---

[2]*See, e.g.*, *United States v. Torres-Flores*, 502 F.3d 885, 887-88 (9th Cir. 2007) (whether to instruct the jury on a lesser included offense); *United States v. Gementera*, 379 F.3d 596, 599-600 & n.5 (9th Cir. 2004) (whether supervised release conditions are reasonably related to permissible purposes); *United States v. Verduzco*, 373 F.3d 1022, 1029-30 (9th Cir. 2004) (whether to exclude evidence as unfairly prejudicial under Federal Rule of Evidence 403); *id.* at 1032 & n.6 (whether to exclude expert testimony); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1023 (9th Cir. 2000) (whether to reduce a jury's award for damages in a Title VII case because it was duplicative of another award for an overlapping claim); *United States v. Olano*, 62 F.3d 1180, *passim* (9th Cir. 1995) (whether to admit evidence on numerous grounds, and whether to grant a variety of trial-management motions).

[3]*See, e.g.*, *United States v. Jimison*, 493 F.3d 1148, 1151 & n.6 (9th Cir. 2007) (holding that we would reverse under the abuse of discretion standard where the district court applied a sentencing enhancement for possession of a firearm in connection with another felony but there was insufficient evidence to demonstrate that the defendant intended to commit that other felony); *In re ZiLOG, Inc.*, 450 F.3d 996, 1003-07 (9th Cir.

court's discretion does not mean rubber-stamping the court's actions.

Thus, while I agree that the *Booker* line of cases has breathed life into the notion of individualized sentencing, I fear that the years spent attempting to read the Supreme Court's six-fingered palm may have distracted the majority from the important task of substantive review those cases gave us. When we sit in review of a district court's sentencing determination, the issue before is us not whether we have been sufficiently "empowered" above the district courts to impose a particular sentence. *But see Vonner*, 516 F.3d at 382 ("*Booker* empowered district courts, not appellate courts

---

2006) (holding that the bankruptcy court abused its discretion in failing to find excusable neglect, notwithstanding that "excusable neglect" is "an equitable [determination], taking account of all relevant circumstances surrounding the party's omission," where the debtor's notices to layperson claimants were confusing) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (holding that a bankruptcy court abused its discretion in *not* finding excusable neglect where an experienced bankruptcy attorney failed to file a timely proof of claim)); *United States v. Southwell*, 432 F.3d 1050, 1052-54 (9th Cir. 2005) (holding that a district court abused its discretion by providing the jury with a note that instructed the jury to refer to the jury instructions and return a unanimous verdict, but failed to include an additional clarifying instruction, when then jury inquired about a legitimate ambiguity in the original instructions); *United States v. Ayres*, 166 F.3d 991, 996-97 (9th Cir. 1999) (holding that a district court abused its discretion when it fined a witness for failure to comply with a civil contempt order because the IRS's inability to schedule a hearing on short notice ultimately caused the finable delay, notwithstanding that the defendant's own delay in contacting the IRS created a foreseeable risk that the IRS could not accommodate him on short notice); *Mendenhall v. NTSB*, 92 F.3d 871, 877 (9th Cir. 1996) (holding that the NTSB abused its discretion in finding that the FAA's position was substantially justified for purposes of EAJA because the agency's actions violated FAA policy and were in bad faith); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994) (holding that the district court abused its discretion by sanctioning appellees' counsel for appellees' failure to attend depositions but the special master monitoring discovery found counsel's behavior unobjectionable).

. . . ." ). Rather the issue is the same we face in any review under the abuse of discretion standard: Was the district court's decision within the boundaries that the law places on the court's discretion?

B

The challenge for us, then, is to determine the boundaries of a reasonable sentence for a given conviction and set of individualized circumstances and then to decide whether the sentence imposed by the district court sits within these boundaries. We have repeatedly stated that "[w]e may not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *SEC v. Coldicutt*, 258 F.3d 939, 914 (9th Cir. 2001) (reviewing a district court's denial of a motion under Fed. R. Civ. P. 60(b)(5)). The Supreme Court has cautioned us that "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Yet this warning must not be construed as a categorical bar to reversal. The Court has instructed that the appellate court "must" review the sentence, both for "procedural error" in calculating the Guidelines and imposing the sentence, and also for "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* The Court's requirement that we "must" review sentences for reasonableness necessarily implies that under some circumstances, we must reverse. Thus, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal," *id.*, but it is sufficient if we are left with a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors.

What might leave us with such a definite and firm conviction? Among many factors discussed, the Supreme Court has instructed us that, even when reviewing a below-guidelines sentence under the deferential abuse of discretion standard, "the extent of the difference between a particular sentence and the recommended Guidelines range is *surely relevant*." *Id*. at 591 (emphasis added). Thus, "[i]n reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Id*. at 594-95 (holding that appellate courts may not adopt bright-line rules or mathematical formulas to determine the strength of justifications necessary for an outside-Guidelines sentence). "[I]f the sentence is outside the Guidelines range, the [appellate] court may not apply a presumption of unreasonableness," but "[w]hen conducting this review, the court will, of course, take into account the totality of the circumstances, *including the extent of any variance from the Guidelines range*." *Id*. at 597 (emphasis added).

Our recent interpretation of the *Booker* cases encapsulated these instructions from the Court. *See United States v. Carty*, 520 F.3d 984, 2008 WL 763770 (9th Cir. 2008) (en banc). We held that, although "[a] court of appeals may *not* presume that a non Guidelines sentence is *un*-reasonable," "we are to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range." *Id.* (citation omitted). We are also to consider whether the district court's weighing of the § 3553(a) factors "on a whole, justify the extent of the variance" from the Guidelines. *Id*. And while "[w]e may not reverse just because we think a different sentence is appropriate," *id*, we must reverse where the district court abused its discretion by committing a clear error of judgment in the conclusion it reached upon weighing the relevant factors.

The majority, in my view, has not fulfilled our responsibility to review this sentence. The majority simply shrugs at the

district court's sentence because "[t]he district court was intimately familiar with the nature of the crime and defendant's role in it, as we are not." Maj. Op. at 8722-23. If that is the standard, we will save ourselves considerable time, because the majority's reasoning is true in every case. District courts will always be more familiar with the crime and the defendant's role. If the majority is correct, then we have moved well beyond *Carty* to a presumption that *all* sentences are reasonable. That was not the rule before the adoption of the Guidelines; it certainly was not the rule while the Guidelines were in effect; and I cannot see that *Rita*, *Gall*, or *Carty* support, must less compel, such a rule.

### III

Under the standard described above, I would find that the district court abused its discretion when, after calculating a Guidelines-recommended sentence of 33 months—a sentence that was already adjusted to take into account the mitigating circumstances of Whitehead's case—it sentenced Whitehead to a mere term of probation, coupled with community service and $50,000 in restitution. This sentence is substantively unreasonable for someone who was convicted of stealing over $1 million in profits from Direct TV and who bragged to have personally made over $400,000 from the theft. None of the factors upon which the district court relied, alone or in combination, warranted this unreasonable sentence.

The district court found mitigating circumstances in the combination of the fact that Whitehead's mother was ill and that he was a custodial parent of his 8-year-old daughter. Yet there was nothing remarkable about the evidence of family relationships Whitehead presented. He testified that he shared custody of his daughter, that they shared a close emotional bond, and that "[j]ust last week we bought a puppy." Whitehead's claim was "nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts [family] relation-

ships." *United States v. Berlier*, 948 F.2d 1093, 1096 (9th Cir. 1991) (quotation marks and citation omitted). Our pre-*Booker* decisions held that a downward departure for "extraordinary family circumstances" required that the defendant be the "*irreplaceable*" caretaker of a child or parent. *See United States v. Leon*, 341 F.3d 928, 931-33 (9th Cir. 2003). Even if these pre-*Booker* cases no longer control, their reasoning is persuasive. A sentence is substantively unreasonable under the abuse of discretion standard where the district court mitigates a sentence based on the mere imposition of hardship on family relationships that necessarily accompanies the order of any prison sentence. *Cf.* U.S.S.G. § 5H1.6 ("[F]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.").

The district court also found mitigating circumstances in the "extreme remorse of the defendant," and his acceptance of responsibility. The district court did not explain the basis for its conclusion nor why this factor called for no jail time. Whitehead put the government to its burden to prove his guilt at trial. The only possible basis for finding "acceptance of responsibility" was that Whitehead admitted to a parole officer that he illegally sold five access cards. Although the district court would be entitled to consider this as acceptance of responsibility, here the district court *already* awarded Whitehead a 2-level downward departure for this factor under its preliminary sentencing calculation. It was an abuse of discretion to use the same facts that under the Guidelines would warrant a 2-level departure to justify a complete sentence reduction, at least without further explanation of why the 2-level departure was insufficient to account for this factor. As for remorse, Whitehead's testimony amounted to little more than an admission that after he got caught and indicted, he wisely turned to a legitimate form of business. The district court offered no explanation as to how this showed such "extreme remorse" that a total reduction of sentence was warranted.[4]

---

[4]The contrast between the facts of this case and *Gall* are illustrative. After a seven month stint in college helping friends to sell drugs, Gall

The district court also stated it found mitigating the fact that there was "little likelihood of recidivism" by Whitehead. However, the likelihood of recidivism was already taken into account during the district court's calculation of Whitehead's criminal history category: the district court placed him into Criminal History Category I, "set for a first offender with the lowest risk of recidivism." *See* U.S.S.G. § 4A1.3, cmt. n.3. In a pre-*Booker* case, the Supreme Court held that a downward departure based on a low likelihood of recidivism was double-counting because the "Commission took that factor into account in formulating the criminal history category." *Koon v. United States*, 518 U.S. 81, 111 (1996); *see also United States v. Working*, 287 F.3d 801, 808 (9th Cir. 2002). Even if these pre-*Booker* cases are no longer controlling, their reasoning is persuasive. The district court abused its discretion by completely reducing Whitehead's sentence based on a low likelihood of recidivism where the Guidelines calculation itself had *already* been reduced to reflect this factor.

In addition to erroneously reducing Whitehead's sentence based on factors that were both unexceptional and *already*

made the decision to choose a different path in life. *See Gall*, 128 S. Ct. at 591-92. Completely on his own initiative, he stopped using drugs, announced that he was withdrawing from the conspiracy, and never sold illicit drugs again. *Id*. at 592. The district court found that Gall's post-offense conduct " 'was not motivated by a desire to please the [c]ourt . . . but was the pre-Indictment product of the Defendant's own desire to lead a better life.' " *Id*. at 593. Here, Whitehead continued his criminal activities up through the time he sold three unlawfully reprogrammed access cards to an undercover FBI agent and was arrested. He contested his guilt through trial. Only after he was caught did he open a painting business to support himself. In *Gall*, the Court reversed the Eighth Circuit because "it ignore[d] the critical relevance of Gall's voluntary withdrawal, a circumstance that distinguished his conduct . . . from the vast majority of defendants convicted of conspiracy in federal court." *Id*. at 600. *Gall* can hardly be read to foreclose reversal when the same kind of mercy shown to Gall was shown in this case to Whitehead, who was merely one of the "vast majority of defendants" from which the Supreme Court distinguished Gall.

reflected in the district court's tentative Guidelines calculation, the district court abused its discretion by erroneously failing to consider and balance the fact that Whitehead's sentence would result in unjust sentencing disparities with his co-defendant. *See* 18 U.S.C. § 3553(a)(6). Whitehead's co-defendant, Vanderziel, had played a minor role in Whitehead's business, and had pleaded guilty and cooperated with the government by testifying against Whitehead at trial. The same district court sentenced Vanderziel to three years' probation and a small fine. As Whitehead concedes, Vanderziel was sentenced to probation instead of imprisonment as recognition for his early guilty plea and agreement to testify against Whitehead at trial. Whitehead, in contrast, was the owner of the piracy enterprise, and contested his guilt through trial. The district court failed to explain how a defendant who contested his guilt through trial should end up with an almost identical sentence to a co-defendant who had specifically been given a minimal sentence in exchange for his guilty plea and cooperation with the government.

## IV

Were it merely the case that I was certain that *I*, sitting as the district court, would have sentenced Whitehead differently, I would agree with the majority that reversal is not proper. *See Carty*, 520 F.3d 984. In this case, however, I am left with a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. The district court reduced Whitehead's sentence from a Guidelines-recommended sentence of 33 months' imprisonment to a term of mere probation based on factors that had *already* been reflected in that Guideline calculation, and failed to explain why the Guidelines-recommended adjustments for these factors were insufficient. The district court failed to account for the fact that by completely reducing Whitehead's sentence, it gave Whitehead essentially the same "reward" that was given

to his co defendant, notwithstanding that only the co-
defendant pleaded guilty and cooperated with the government.

Moreover, I am concerned that this sentence now becomes
a baseline against which we measure other sentences.
Although the majority is quite comfortable leaving White-
head's sentencing to the district court, we also have an obliga-
tion to other defendants to ensure that their sentences are fair
and within some broad range of Platonic equality. White-
head's non-sentence surely becomes an important starting
point for defendants in this circuit willing to claim close fam-
ily ties and post-conviction remorse to avoid prison.[5] As a cir-
cuit, we have an obligation to ensure roughly equal sentences
both among our judicial districts and within each judicial dis-
trict. Deferring equally to district court sentences is not the
same as securing equal sentences in district court.

Whitehead stole over $1 million in profits from DirectTV,
and personally took in approximately $400,000. The district
court's sentence of a mere term of probation, where the
Guidelines—adjusted to account for Whitehead's mitigating
circumstances—recommended 33 months in prison, was sub-
stantively unreasonable. I agree with the government's attor-
ney, who uttered in shock when he heard the district court's
proposed sentence: "It's got to be . . . the case, Your Honor,
that folks are held responsible for what they do."

I respectfully dissent.

---

[5]I am further troubled by the possibility that upholding this abuse of dis-
cretion will greatly weaken the ability of prosecutors to secure the evi-
dence necessary for successful convictions. The majority opinion
eviscerates the power to negotiate plea agreements contingent on coopera-
tion with law enforcement and testimony at trial. Why would a low-level
player plead guilty and testify against a high-ranking co-conspirator in
exchange for the promise of a sentence reduction, risking possible recrimi-
nations for snitching, when he knows he is just as likely to receive the
same complete sentence reduction whether or not he cooperates with the
government?