**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            v.

KEVIN LEE RUFF,
            *Defendant-Appellee.*

No. 07-30213

D.C. No.
CR-06-00132-1-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief District Judge, Presiding

Argued and Submitted
February 5, 2008—Seattle, Washington

Filed August 1, 2008

Before: Raymond C. Fisher, Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Fisher;
Dissent by Judge Gould

**COUNSEL**

James A. McDevitt, United States Attorney; Joseph H. Harrington (argued), Assistant United States Attorney, Eastern District of Washington, for the plaintiff-appellant.

David R. Hearrean, Spokane, Washington, for the defendant-appellee.

## OPINION

FISHER, Circuit Judge:

Kevin Lee Ruff ("Ruff") pled guilty to several counts of health care fraud, embezzlement and money laundering. The district court originally sentenced Ruff to a prison term of 12 months and one day and three years supervised release, recommending that he serve his sentence at Geiger Corrections Center ("Geiger") to allow him to work, pay restitution and visit with his then 11-year-old son. Discovering that Geiger would not house prisoners, the district court amended Ruff's sentence to one day of imprisonment and three years of supervised release, with the condition that he serve 12 months and one day of his supervised release at Geiger. The government insists that this modification overstepped the bounds of the district court's sentencing authority. We disagree. Applying the requisite deferential standard of review, we conclude that the district court did not abuse its discretion and that the sentence it imposed is reasonable. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Ruff worked as a Materials Supervisor at Sacred Heart Medical Center ("SHMC") between January 2002 and October 2005. In this capacity, he "had access and authority to record receipt of inventory, to make adjustments to the inventory account, and to modify purchase orders to include additional items for inventory." Ruff took advantage of this authority to steal $644,866 worth of SHMC inventory and sell it over eBay. When confronted by his employer, Ruff readily admitted his illegal conduct and cooperated with federal investigators. In December 2006, he pled guilty to one count of health care fraud, in violation of 18 U.S.C. § 1347, four counts of theft, embezzlement and conversion of property and assets of a health care benefit program, in violation of 18 U.S.C. § 669, and four counts of money laundering, in viola-

tion of 18 U.S.C. § 1956(a)(1). The Presentencing Report calculated Ruff's guideline range as 30-37 months.

At a May 1, 2007 sentencing hearing, the district judge began his analysis by accepting the guideline range as accurate and noting its advisory nature. Acknowledging that he was "required to impose a sentence that's sufficient, but not greater than necessary to comply with the provisions of the law," the judge then considered the sentencing factors embodied in 18 U.S.C. § 3553(a). With respect to aggravating factors, he noted the crime was "serious" given the manner in which it was committed and the amount of property it involved. He went on to emphasize a host of mitigating factors, including: (1) Ruff's history of strong employment; (2) his cooperation and "clear[ ] remorse[ ]"; (3) his support from his siblings; (4) the absence of potential risk to the public and the appropriateness of restitution; and (5) his mental health issues and gambling addiction. With respect to this final factor, Ruff admitted that he had lost approximately $200,000 to compulsive gambling, and that he had participated in counseling for pathological gambling and depression between November 2005 and March 2006. The judge observed that Ruff would clearly benefit from continued mental health treatment for his illness and, considering all of the factors, committed Ruff to the custody of the United States Board of Prisons ("BOP") for 12 months and one day, recommending that he serve his sentence at Geiger to allow him to participate in work release, get counseling and attend off-site visits with his son. He also placed Ruff on three years of supervised release.

Less than one week later, the judge learned that Geiger could house Ruff only if his confinement was as a condition of supervised release. Reconvening a hearing on May 7, the judge "amend[ed] the judgment" by committing Ruff to the custody of BOP for one day and placing him on three years supervised release. As a condition of his supervised release, Ruff was required to serve a term of confinement of one year

and one day in a confinement facility. The judge again recommended that Ruff spend this period at Geiger to facilitate his work release, treatment and child visitation.

## STANDARD OF REVIEW

The abuse of discretion standard applies to all sentencing decisions, both those within and outside of the guidelines. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). We first must ensure that the district court did not commit a significant procedural error and then consider the sentence's substantive reasonableness. *See Gall*, 128 S. Ct. at 597; *United States v. Rising Sun*, 522 F.3d 989, 993 (9th Cir. 2008). Although we "consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the [g]uidelines range," extraordinary circumstances are not needed to justify a sentence outside the guidelines range and we must give due deference to the district court's decision that the sentencing factors warrant a particular variance. *Carty*, 520 F.3d at 993; *see also Gall*, 128 S. Ct. at 595-97. This standard reflects the common theme throughout the Supreme Court's recent sentencing decisions — to "breathe life into the authority of district court judges to engage in individualized sentencing." *United States v. Whitehead,* ___ F.3d ___, No. 05-50458, 2008 WL 2718867, *1 (9th Cir. July 14, 2008) (per curiam) (internal quotation marks omitted).

## I.

The government first contends that the district court committed a procedural error by failing to address any of the sentencing factors during the May 7, 2007 hearing. Because we cannot reasonably consider this second hearing in isolation from the May 1 hearing, when the court analyzed the sentencing factors in detail, the district judge's failure to reiterate his

previous analysis from the week before does not constitute procedural error.

**[1]** The district court is statutorily required "at the time of sentencing, [to] state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). "It is most helpful for this to come from the bench, but adequate explanation in some cases may also be inferred from . . . the record as a whole." *Carty*, 520 F.3d at 992. The district court "articulated its reasoning to the degree required for meaningful appellate review" during the May 1 hearing. *United States v. Perez-Perez*, 512 F.3d 514, 517 (9th Cir. 2008). Discovering that the intended sentence was not feasible in its original structure, the judge convened the May 7 hearing to modify the sentence specifically to allow the BOP to effectuate the sentence the judge had initially proposed. It is plain that the judge considered this second hearing a mere continuation of the first. It would elevate form over substance to require the judge to reiterate the sentencing factors at the second hearing, as the only alteration was the terminology he used: both before and after the second hearing, Ruff was required to spend 12 months and one day of confinement in a residential center, where he could receive counseling for his gambling addiction, participate in work release to help pay restitution and have periodic visitations with his son as BOP might approve. Applying the judge's reasoning from the May 1 hearing to the substantively identical sentence imposed at the May 7 hearing, we conclude that there was no procedural error. *Cf. United States v. Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006) (holding that the reasoning for the probationary sentence "carried over" to the five hour prison sentence that was imposed after the district court learned that the criminal statute required some incarceration).

## II.

**[2]** For similar reasons, we are not persuaded by the government's argument that Ruff's sentence is substantively

unreasonable. The original below-guideline sentence was reasonable in light of the mitigating factors the judge discussed in detail during the May 1 hearing. *Cf. Gall*, 128 S. Ct. at 592-93, 598-602 (holding that a sentence of 36 months probation when the applicable guideline range recommended 30 to 37 months imprisonment was reasonable based on district court's reasoning); *Whitehead,* 2008 WL 2718867 at *1 (affirming below-guideline sentence post-*Gall* based on district court's reasoning). The dissent emphasizes that certain factors discussed in *Gall* are not present here. Dissent at 9871-73. The clear message in *Gall*, however, is that we must defer "to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." 128 S.Ct. at 602. *Gall* happened to discuss post-crime maturation and self-rehabilitation because they were the basis of the district court's reasoned decision in that case, but it is the reasoned decision itself, not the specific reasons that are cited, that triggers our duty to defer. Here, the district judge plainly satisfied this requirement, relying on factors such as treatment, cooperation and familial support to arrive at his chosen sentence. "[I]ntimately familiar with the nature of the crime and [the] defendant's role in it, as we are not" and able to appraise Ruff's sincerity, as we cannot, "the district court was 'in a superior position' to find the relevant facts and to 'judge their import.' " *Whitehead*, 2008 WL 2718867 at *1 (quoting *Gall*, 128 S. Ct. at 597).[1]

---

[1]With respect to the dissent's discussion of sentencing decisions involving white collar crime, we note that courts have affirmed low or below guidelines sentences for crimes ranging from the distribution of controlled substances to the unlawful possession of child pornography or a firearm. *See, e.g.*, *Gall*, 128 S. Ct. at 602 (affirming below guidelines sentence for conspiracy to distribute ecstasy); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (affirming below guidelines sentence for conspiracy to distribute cocaine base); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirming below guidelines sentence for possession of child pornography); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (affirming below guidelines sentence for unlawful possession of a firearm); *United States v. McGhee*, 512 F.3d 1050 (8th Cir. 2008) (affirming

**[3]** These same factors also justify the amended sentence as reasonable, because the only difference between the two sentences is one of meaningless semantics. Repeatedly referring to Ruff's sentence as imposing only one day in jail, the government entirely ignores that a condition of the modified sentence is a 12 month and one day period of confinement in a residential facility. The dissent similarly downplays the severity of Ruff's sentence, describing it as "a mere slap on the wrist." Dissent at 9873. These characterizations directly flout the Supreme Court's instruction that courts should not quantify variances from the guidelines "as a certain percentage of the maximum, minimum, or median prison sentence recommended by the [g]uidelines" because this "gives no weight to the 'substantial restriction of freedom' involved in a term of supervised release or probation." *Gall*, 128 S. Ct. at 595. Noting that custodial sentences (such as the one at issue here) are "qualitatively more severe than probationary sentences," the Supreme Court went on to emphasize that even the latter are quite oppressive given that probationers are "subject to several standard conditions that substantially restrict their liberty." *Id*. Following this lead, we recently affirmed a sentence of probation, community service and restitution, where the guidelines range recommended 41-51 months, emphasizing "the district court was 'in a superior position' to find the relevant facts and to 'judge their import.' " *Whitehead*, 2008 WL 2718867 at *1 (quoting *Gall*, 128 S. Ct. at 597). Ruff's sentence is even more arduous than Gall's or Whitehead's, given that Ruff is being confined in the very facility the district

---

below guidelines sentence for possession with intent to distribute cocaine base); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming below guidelines sentence for possession of child pornography); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming below guidelines sentence for distribution of child pornography). Although "more time thinking about the appropriate punishment for white collar crime," Dissent at 9874, may be necessary as a general matter, neither we nor the district court, as the record shows, are purporting to treat white collar crimes differently from other crimes.

court had originally recommended for his imprisonment, subject to the identical conditions relating to work, visitation and counseling. Moreover, Ruff's subsequent probation is subject to several special conditions that drastically curtail his financial autonomy. *See Gall*, 128 S. Ct. at 596 (citing special conditions during probationary period as evidence of its severity). Given these circumstances, it is illogical and inappropriate to treat the modified sentence as anything other than functionally identical to Ruff's original, substantively reasonable sentence.

**[4]** Even assuming we were to disagree with the district judge's assessment of Ruff's merits and demerits, "[t]hat we might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *United States v. Stoterau*, 524 F.3d 988, 999 (9th Cir. 2008) (internal quotation marks omitted); *see also Whitehead*, 2008 WL 2718867 at *1 ("Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis."). Following the Supreme Court's clear mandate, we defer to the district court's "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Gall*, 128 S. Ct. at 602.

**AFFIRMED.**

---

GOULD, Circuit Judge, dissenting:

Kevin Lee Ruff will serve just one day in prison for using his position as materials supervisor at Sacred Heart Medical Center ("SHMC") to steal $644,866 of supplies, selling the stolen materials on eBay, and covering his tracks by entering more than one thousand false downward inventory adjustments to SHMC's computerized inventory log. His extensive course of dishonest conduct was neither short-lived nor sporadic. Instead, he extended his embezzlement scheme for sev-

eral years during which he grew progressively bolder, and stole an increasing number of supplies. Ruff's sentence with only one day of imprisonment is not reasonable and we should say so in no uncertain terms.

I agree with the majority that, under *Gall* and *Rita*, sentencing is a discretionary decision made by a district court after engaging in an individualized evaluation of the facts of a case and applying the § 3553(a) factors to the particular offender before it. Where I part ways with the majority, however, is in the scope of our duty, as an appellate court, to review a district court's sentencing decision for abuse of discretion. As Chief Justice John Marshall long ago stated, discretionary choices are not left to the district court's "inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (No. 14,692d) (CC Va. 1807).[1] The abuse of discretion standard of review is not a rubber stamp of all sentencing decisions made by a district court. Instead, it requires us to vacate a sentence when it is substantively unreasonable. Where "we have a definite and firm conviction that the district court committed a clear error of judgement" in imposing a particular sentence, it is our duty to vacate the sentence as unreasonable. *See SEC v. Coldicutt*, 258 F.3d 939, 914 (9th Cir. 2001). Here, the reasons given by the district court to support its sentence do not warrant a one-day prison term, even given the condition of supervised release that Ruff spend twelve months and a day in a residential confinement facility. This sentence is a substantively unreasonable punishment for Ruff's theft of more than a half-million dollars in inventory supplies from his non-profit employer.

The majority asserts that the Supreme Court's decision in *Gall* supports the conclusion that the district court did not

---

[1]This statement was made by Chief Justice Marshall when he sat on the Circuit Court of the District of Virginia in the celebrated case involving Aaron Burr's trial for treason.

abuse its discretion in sentencing Ruff to a one-day prison term followed by three years of supervised release, twelve months and a day of which will be served in a residential confinement facility. I cannot agree. In *Gall*, the Supreme Court identified two factors that allowed it to conclude that the district court did not abuse its discretion by deciding not to sentence Gall to prison: Gall's post-crime maturation and self-rehabilitation. 128 S. Ct. at 600-02. The Supreme Court concluded that the district court "quite reasonably attached great weight to Gall's self-motivated rehabilitation," determining that it provided the district court with "greater justification" than if the "rehabilitation [had] occurred after he was charged with the crime," and that Gall's self-rehabilitation "lend[ed] strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts." *Id.* The Supreme Court also concluded that the district court reasonably justified the Guidelines departure by pointing to Gall's young age and immaturity at the time of his crime, and his subsequent maturity thereafter demonstrated by withdrawing from the conspiracy, ending all drug use, and starting his own business, all before being prosecuted. *Id.* at 601. These two key factors—post-crime maturation and self-rehabilitation—are not present in Ruff's case. Unlike Gall, Ruff was not immature when he began his criminal conduct at the age of 38. He had a son and had been lawfully employed for several years. Nor did Ruff self-rehabilitate; he continued his criminal conduct until he was caught, stealing more than a half-million dollars in supplies from a non-profit hospital over a three-and-a-half-year period, with the pace and severity of his theft increasing year by year until he was caught.

This latter distinction is important. The Supreme Court in *Gall* concluded that the district court's sentence of probation was reasonable because Gall's rehabilitation before he was contacted by authorities for his involvement in the drug conspiracy supported the conclusion that imprisonment was not

necessary to prevent future criminal conduct. 128 S. Ct. at 602. In this case, the district court identified Ruff's remorsefulness and willingness to cooperate with authorities as support for his one-day sentence, but these factors, which Ruff only exhibited once he was caught, do not support a conclusion that imprisonment is unnecessary to prevent Ruff from engaging in future criminal conduct. The district court cited other factors to support his sentence: (1) Ruff's age as a first-time offender; (2) his mental, financial and gambling problems; (3) his earlier history of "strong employment;" and (4) his need to pay restitution. Although these factors support some departure from the 30 to 37 months of imprisonment recommended by the Guidelines, they do not provide sufficient justification under *Gall* for a one-day prison term for a crime of this magnitude. *Id.* at 597 ("[A] *major* departure should be supported by *a more significant justification* than a minor one." (emphasis added)). The district court committed a clear error of judgment in the conclusion it reached upon weighing the § 3553(a) factors.

The majority's opinion suggests that the condition of Ruff's supervised release which requires that he live for twelve months and a day in a residential confinement facility is sufficiently similar to imprisonment to make Ruff's one-day prison sentence substantively reasonable. I disagree. As a resident of Geiger Corrections Center, Ruff will be permitted to participate in release programs for work, treatment, counseling, and child visitations. This is a far cry from imprisonment, where prisoners are confined twenty-four hours per day and sleep in prison cells at night. Precisely because of these differences, the district court had to resentence Ruff to place him in Geiger: the non-prison facility does not house prisoners, but instead provides a residence for convicts on supervised release.

To provide for a mere slap on the wrist of those convicted of serious economic crimes, with no or virtually no time imprisoned as punishment, strikes a blow to the integrity of

our criminal justice system. In the end, if not corrected, the majority's approach will be dangerous to respect for our legal system. Can it be seriously maintained that wilful offenders who commit white collar crime, who steal intentionally hundreds of thousands or even millions of dollars, should receive no forced incarceration, while those poor and powerless criminal defendants who commit common larceny or theft often serve extensive hard time? I respectfully dissent because I do not believe it prudent for us as an appellate court to hold as reasonable sentences that in their laxity to white collar crime are patently unreasonable, and that indeed will likely be considered offensively unreasonable to the vast majority of law abiding citizens who may become aware of these proceedings. Members of the public with respect for the law, even if they have less learning than appellate judges on our standards for abuse of discretion review and on the principle of deference to trial court sentencing, will doubtless consider it almost inconceivable that a man who steals more than a half-million dollars in a calculated and prolonged course of deception and embezzlement over several years will suffer only a single day in prison. I respectfully dissent because I have a firm and definite conviction that we err in holding Ruff's sentence here to be reasonable.

This is not the first case in which a panel of our court has upheld as reasonable a lax sentence for a white collar criminal. *United States v. Whitehead,* __ F.3d __, No. 05-50458, 2008 WL 2718867 (9th Cir. July 14, 2008) (per curiam). In *Whitehead*, Judge Bybee wrote a vigorous dissent with which I substantially agree. It seems inescapable that we as a court need to spend more time thinking about the appropriate punishment for white collar crime.

We perhaps also ought to consider why it is that such light sentences are all too frequently handed out by district courts for white collar crimes. *Cf.* Peter Fridirici, *Does Economic Crime Pay in Pennsylvania? The Perception of Leniency in Pennsylvania Economic Offender Sentencing*, 45 Vill. L. Rev.

793, 809-18 (2000) (explaining the United States Sentencing Commission's policy objective to rectify the perceived leniency toward white collar offenders by providing in the Guidelines short but certain terms of imprisonment for economic crimes that would have likely resulted in only probation prior to the Guidelines).

There is no doubt that prisons filled with dangerous inmates are dangerous places and some district courts may hesitate to confine white collar criminals in such dangerous facilities. However, the ordinary convict is subjected to these risks and forced to run a gauntlet of varied threats with imprisonment, so it is hard for me to see how we can favor the class of offenders who commit white collar crimes. It may be that district courts sentencing white collar criminals can more often identify with the criminal who may ostensibly have a slot in society. But, socioeconomic comfort with a criminal convict is not a sufficient reason to show such extreme leniency that economic crimes will not be deterred. It may also be that a non-incarcerated convict will be in a superior position to make restitution to the victims of his crimes. And possibly for that reason we see cases where the corporate victim favors either no prison time or early release to get a better and earlier chance for restitution. But, absent sufficient penalty for such serious crimes, society runs the risk that the convict may offend again, and, for all we know, make restitution with the fruits of a future crime. A victim's desire for restitution or for conditions facilitating restitution cannot be given primacy over protecting society from the white collar criminal or deterring others from attempting similar crimes.

Ruff stole $644,866 of supplies from the non-profit hospital that employed him. He assiduously pursued his path of deception by entering false data in the hospital inventory logs, showing the calculated and intentional manner of his dishonesty for years, and sold his ill-gotten loot on eBay. Ruff did not end his three-and-a-half-year crime spree until he was

questioned by hospital staff. The Guidelines recommended 30 to 37 months of imprisonment, but the district court sentenced Ruff to just one day in prison followed by three years of supervised release, twelve months and a day of which is to be served in the Geiger residential confinement facility. This trivial imprisonment for this major crime is substantively unreasonable. Hence, with respect but a firm conviction that the majority is wrong, I dissent.