**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

    v.

JAVIER AMEZCUA-VASQUEZ,
       *Defendant-Appellant.*

No. 07-50239

D.C. No.
CR-06-02104-WQH

ORDER

Filed November 10, 2009

Before: William C. Canby, Jr., Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

---

## ORDER

A judge sua sponte requested a vote on whether to rehear this matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed R. App. P. 35.

The mandate shall issue forthwith.

O'SCANNLAIN, Circuit Judge, dissenting from the denial of rehearing en banc, joined by KOZINSKI, Chief Judge, and GOULD, TALLMAN, CALLAHAN, BEA, and N.R. SMITH, Circuit Judges:

This is the first published opinion in this circuit reversing a within-Guidelines sentence as substantively unreasonable. The panel reaches this unprecedented result by casting aside Supreme Court and Ninth Circuit precedent in three ways: first, by failing to apply the appropriate standard of review; second, by recognizing a brand-new category of sentencing factors whose consideration by the district court warrants virtually no deference; and finally, by assuming a policymaking role properly reserved to the district court. I must respectfully dissent from our failure to rehear this case en banc.

I

Javier Amezcua-Vasquez ("Amezcua"), a Mexican national, became a lawful permanent resident of the United States in 1957, at the age of two. In 1981, he was convicted in state court of attempted voluntary manslaughter and assault with great bodily injury for stabbing someone with a knife in a gang-related bar fight. Based on his 1981 conviction, Amezcua was ordered removed to Mexico in 2006. Just two weeks after his removal, however, he was caught trying to reenter the United States. A grand jury returned an indictment charging him with attempted illegal reentry in violation of 8 U.S.C. § 1326. Amezcua pled guilty.

At sentencing, the district court determined that Amezcua's base offense level was 8 under U.S.S.G. § 2L1.2(a). The court then applied a sixteen-level increase under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Amezcua's 1981 conviction was for a felony that was a "crime of violence." After applying a two-level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, the court arrived at a total offense level of 22. As for Amezcua's criminal history, the court placed him

in category II based on a 1999 conviction for an offense involving a controlled substance. Significantly, Amezcua's 1981 conviction did not count toward his criminal history score because it fell outside the applicable time period under the Guidelines. *See id.* § 4A1.2(e). Six of Amezcua's other prior convictions also did not count.

Based on a total offense level of 22 and a criminal history category II, the district court calculated an advisory Guidelines range of 46 to 57 months' imprisonment. The court sentenced Amezcua to 52 months, in the middle of the range. It explained that it had "considered all" of the factors set forth in 18 U.S.C. § 3553(a), including "the defendant's prior record and the circumstances of the offense." Although the court did not think the circumstances of the offense were "particularly aggravating," it believed that 52 months was "the minimum sentence that would afford deterrence to criminal conduct," given "the defendant's prior criminal history and contacts with law enforcement." The court described those contacts as "significant," and noted that "a number" of them had not been scored under the Guidelines.

The panel reversed, holding that Amezcua's 52-month, within-Guidelines sentence was substantively unreasonable. The panel disapproved of "the unmitigated application of the Guidelines sentence with its 16-level enhancement" based on Amezcua's 1981 conviction for a "crime of violence." *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009). The panel explained:

> Although it may be reasonable to take *some* account of an aggravated felony, no matter how stale, in assessing the seriousness of an unlawful reentry into the country, it does not follow that it is inevitably reasonable to assume that a decades-old prior conviction is deserving of the same severe additional punishment as a recent one. The staleness of the conviction does not affect the Guidelines calculation,

but it does affect the § 3553(a) analysis. We hold that the district court abused its discretion when it applied the Guidelines sentence to Amezcua without making allowances for the staleness of the prior conviction and his subsequent lack of any other convictions for violent crimes. The result was an unreasonable sentence.

*Id.* at 1055-56.

The panel maintained that its decision was "not inconsistent" with *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008), or *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008), two cases in which we upheld sentences *below* the advisory Guidelines range. *Amezcua-Vasquez*, 567 F.3d at 1056. According to the panel, the sentences affirmed in *Whitehead* and *Ruff* were "the product of *defendant-specific* § 3553(a) mitigating (or aggravating) factors with respect to which the district court was in a superior position to find the relevant facts and to judge their import." *Id.* at 1057 (internal quotation marks omitted). By contrast, the panel suggested, Amezcua's sentence was the product of "*offense-specific* sentencing factors," which the district court was *not* in a superior position to evaluate. *Id.* Given this distinction, the panel concluded, "[n]either *Whitehead* nor *Ruff* requires us to affirm the sentence in the present circumstances." *Id.*

## II

By now, we should all be familiar with the post-*Booker* standard governing appellate review of sentences for substantive reasonableness. As the Supreme Court reminded us in *Gall v. United States*, 128 S. Ct. 586 (2007), "courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Id.* at 591. "The fact that the appellate court might reasonably have concluded that

a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 597.

The panel insists that it gave "due weight to these principles," *Amezcua-Vasquez*, 567 F.3d at 1055, but its analysis suggests otherwise. Despite quoting a few passages from *Gall* and other sentencing cases, *see id.*, the panel pays no heed to the appropriate standard of review, giving little, if any, deference to the district court's conclusion that the § 3553(a) factors warranted a within-Guidelines sentence. *Cf. Gall*, 128 S. Ct. at 600.

The panel essentially concedes as much. It relies on a distinction between "defendant-specific" and "offense-specific" factors to justify giving virtually no weight to the district court's consideration of the seriousness of Amezcua's criminal history. But such a distinction finds no support in Supreme Court precedent. The Court has never said that a district court's decision with respect to some § 3553(a) factors deserves deference while a district court's decision with respect to other § 3553(a) factors does not. Instead, the Court has consistently referred to the § 3553(a) factors as a whole, without any indication that "defendant-specific" factors should be treated differently than "offense-specific" factors. *See, e.g.*, *Gall*, 128 S. Ct. at 596-98.

In *Ruff*, moreover, we rejected the very notion that the level of deference we owe depends on the type of sentencing factors at issue. Although the panel attempts to portray *Ruff* as a case involving only "defendant-specific" factors, we expressly declined in *Ruff* to recognize any distinction among the factors set forth in § 3553(a). We explained:

> The clear message in *Gall* . . . is that we must defer "to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Gall* happened to discuss post-crime maturation and self-rehabilitation because they

were the basis of the district court's reasoned deci-
sion in that case, *but it is the reasoned decision itself,
not the specific reasons that are cited, that triggers
our duty to defer.*

535 F.3d at 1003 (emphasis added) (citation omitted) (quoting
*Gall*, 128 S. Ct. at 602). *Ruff* makes plain that the deferential
abuse-of-discretion standard applies regardless of which
§ 3553(a) factors form the basis of the district court's deci-
sion. By creating an exception to the deferential abuse-of-
discretion standard for any sentence based on a district court's
consideration of a defendant's criminal history (or other
"offense-specific" factors), the panel's decision significantly
distorts the law of this circuit.

To make matters worse, the panel's distinction between
"defendant-specific" and "offense-specific" factors is hardly
any distinction at all. Almost any "offense-specific" factor
could also be characterized as a "defendant-specific" factor,
and vice versa. The panel itself seems confused about the dif-
ference. For the most part, it seems to treat the seriousness of
Amezcua's criminal history as an "offense-specific" factor,
whose consideration by the district court is entitled to virtu-
ally no deference. But the panel also expressly refers to "the
staleness of [Amezcua's] predicate prior conviction and its
diminished import on the severity of [his] illegal reentry" as
"defendant-specific facts." *Amezcua-Vasquez*, 567 F.3d at
1057 ("[T]he district court applied the Guidelines sentence
without considering the defendant-specific facts that made the
resulting sentence unreasonable under § 3553(a)—i.e., the
staleness of the predicate prior conviction and its diminished
import on the severity of the illegal reentry decades after the
original conviction."). Even the panel can't seem to keep the
two categories straight.

Although the panel assures us that the scope of its decision
is "limited," *id.* at 1058, its novel distinction between
"defendant-specific" and "offense-specific" factors will be a

lasting source of confusion. In struggling to distinguish the two types of factors, future panels will be tempted to characterize the district court's considerations as involving either one or the other, depending on whether they agree or disagree with the defendant's sentence. From now on, any panel that disagrees with a defendant's sentence can justify giving the district court's considerations less weight by simply characterizing them as "offense-specific." No one will be the wiser, given the near-impossibility of telling the two types of factors apart.

## III

The panel's failure to apply the appropriate standard of review is not the only reason we should have reheard this case en banc. By faulting the district court for *not* disagreeing with the sentencing policy reflected in U.S.S.G. § 2L1.2(b)(1)(A)(ii), the panel assumes a policymaking role inappropriate for an appellate court.

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the district court imposed a sentence below the advisory Guidelines range based on a policy disagreement with the 100-to-1 crack/powder cocaine disparity under the Guidelines. *See id.* at 565. The Supreme Court held that the district court did not abuse its discretion, given that the crack cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 575. But it is one thing to say that a district court *may* vary from the crack cocaine Guidelines on policy grounds; it is quite another to say that it *must*. *Kimbrough* does *not* "mean[ ] that a district court now acts unreasonably, abuses its discretion, or otherwise commits error if it does *not* consider the crack/powder sentencing disparity." *United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008) (emphasis added).

Similarly, here, it is one thing to say that the district court could have varied from § 2L1.2(b)(1)(A)(ii); it is quite

another to say that the district court had an obligation to vary. By requiring the district court to vary based on the *panel*'s disagreement with the policy reflected in § 2L1.2(b)(1)(A)(ii), *see Amezcua-Vasquez*, 567 F.3d at 1056, the panel turns *Kimbrough* on its head. It converts the district court's *discretion* to vary from the Guidelines based on a policy disagreement into a *mandate* that it do so. But *Kimbrough* is a shield, not a sword. It protects the district court's discretion to make policy judgments; we are not supposed to pierce it. By taking issue with the "unmitigated application" of § 2L1.2(b)(1)(A)(ii), *id.* at 1055, the panel substitutes its own policy judgment for that of the district court as well as the Sentencing Commission.

In any event, the panel's policy disagreement with the Guidelines proceeds on a faulty premise. Contrary to the panel's view, the Guidelines do not "assume that a decades-old prior conviction is deserving of the same severe additional punishment as a recent one." *Id.* at 1055-56. The Guidelines *do* account for the staleness of a defendant's prior conviction —in the calculation of the defendant's criminal history score. Here, Amezcua's 1981 conviction did *not* count toward his criminal history score precisely because it was "decades-old." *See* U.S.S.G. § 4A1.2(e). To say that the Guidelines failed to account for the staleness of Amezcua's prior conviction is simply inaccurate.

IV

This is not just another sentencing case. Employing what amounts to a de novo standard of review, the panel becomes the first in our circuit to publish an opinion reversing a within-Guidelines sentence as substantively unreasonable. In the process, the panel recognizes a brand-new category of sentencing considerations purportedly undeserving of deference, and usurps the policymaking role of the district court as well as the Sentencing Commission. For these reasons, I respectfully dissent from the denial of rehearing en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.