GRABER, Circuit Judge:
After a jury trial, Defendant Marion Hungerford was convicted of conspiracy, seven counts of robbery, and seven counts of using a firearm in relation to a crime of violence, in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 1952, and 18 U.S.C. § 924(c)(1) and (c)(2). She appeals her conviction of four of the counts of robbery and the four related counts of using a firearm. She also appeals her sentence; she received 57 months of imprisonment for the conspiracy and robbery counts, to run concurrently, plus 60 months for the first firearm charge and 300 months for each of the other firearm charges, to run consecutively. We affirm.
FACTUAL AND PROCEDURAL HISTORY
Defendant met Dana Canfield in September 2001. In 2002, Canfield moved into her home. Neither was employed at the time. In order to get money to pay rent, Canfield and Defendant decided to rob a convenience store. At trial, Canfield testified, “Marion said that she was going to have to go on a crime spree. And since she has problems walking and stuff, I decided that I would do it.” The pair drove around together looking at potential places to rob. They decided on a convenience store called 3-G’s. In March 2002, Defendant dropped him off at the 3-G’s and drove to a nearby laundromat. Canfield robbed the store at gunpoint, rendezvoused with Defendant at the laundromat, *1115 and gave her the money. The jury found Defendant not guilty of the 3-G’s robbery.
The 3-G’s robbery was the first in a series of Montana armed robberies carried out by Canfield at Defendant’s instigation, the proceeds of which she received and spent. Next, Canfield testified to robbing a store called Bottles & Shots on April 6, 2002. He drove himself to the location while Defendant again waited for him at a laundromat. Again, he used a gun and delivered the proceeds of the robbery to Defendant. The jury found Defendant not guilty of the Bottles & Shots robbery.
Canfield testified that, after he told Defendant about the adrenaline rush that accompanied the robberies, “she wanted to be more involved in the crimes, so she wanted to be — she wanted to help participate.” On May 6, 2002, Canfield robbed the Jackpot Casino, using a firearm. Defendant went into the casino ahead of Can-field and called to tell him how many people were inside and how many tills were operating. The jury found Defendant guilty of the Jackpot Casino robbery, a conviction that she does not challenge on appeal.
Canfield described similar involvement by Defendant in both the Alpine Casino and Cenex AmPride robberies. The two drove together to the Alpine Casino; Defendant entered, counted the number of employees who were working there, and returned to the car to report the information to Canfield. He then went inside, robbed the casino at gunpoint, returned to the car where Defendant was waiting, and gave her the money. Similarly, at the Cenex AmPride convenience store, Defendant went into the store first and signaled to Canfield that it was safe to proceed with the robbery. The jury convicted Defendant of both of those robberies, and she does not challenge those convictions here.
After the Cenex AmPride robbery, Detective Ewalt telephoned Defendant to ask questions about the Jackpot Casino robbery. Defendant and Canfield discussed the false statement that Defendant planned to give to the detective to impede his investigation. Further, they agreed that Defendant should establish an alibi during the next robbery. At the Jackpot Casino and Cenex AmPride robberies, she had been seen by employees when she entered the establishments just before the robber came in. Consequently, Defendant planned to remain at the home of the couple’s landlord while Canfield committed the next robbery.
According to Canfield, Defendant did not help him “case out” the next location; she left “most ... everything” up to him about where to go and what to do. Can-field robbed Magoo’s at gunpoint on June 13, 2002. When he returned home afterward, Defendant was there and he gave her the money that he had stolen.
Canfield committed an armed robbery at the Second Shift Bar on June 25, 2002. Defendant did not help him case that establishment beforehand, nor did he tell her what business he planned to rob. Afterward, though, he gave all the proceeds to Defendant.
Canfield robbed the Winners Circle on July 2, 2002, using a firearm. Again, Defendant did not scout the location, and she stayed home during the robbery. She knew that Canfield was going to commit another robbery but did not know specifically where. Canfield gave the proceeds of this robbery, too, to Defendant.
Although her direct participation in these later robberies was minimal, Defendant did not ask Canfield to stop committing armed robberies. She accepted the proceeds, knowing their source, and the proceeds from these periodic crimes provided the only means the couple had to meet their financial needs.
*1116 After they had a chance meeting with Detective Ewalt, Defendant and Canfield decided that they ought to end the string of armed robberies. They mapped out a strategy to “leave a trail out of town” and then stop. The plan was to rob an establishment in Butte, Montana, then go to Missoula and rob another place there “using the same mask and MO” as had been used in the earlier robberies. They traveled to Butte, rented a hotel room, and together they scouted possible targets. They selected an establishment called Gramma’s. When Canfield went there on July 27, 2002, he decided against robbing it and instead chose to rob Joker’s Wild. Defendant remained in the hotel during this armed robbery. Afterward, Canfield gave Defendant the proceeds, and both of them together destroyed the checks, which they had obtained along with the cash. The police arrested Canfield that night at the hotel; Defendant was arrested later. Before being arrested, Defendant contacted an acquaintance and coaxed her to make a false statement to the Butte police concerning the identity of the Joker’s Wild robber, to throw them off track.
STANDARDS OF REVIEW
We review de novo a district court’s denial of a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. United States v. Johnson, 357 F.3d 980, 983 (9th Cir.2004). We review the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.
We review de novo whether a statute is void for vagueness. United States v. Rodriguez, 360 F.3d 949, 953 (9th Cir.), cert. denied, 543 U.S. 867, 125 S.Ct. 210, 160 L.Ed.2d 112 (2004). Similarly, we review de novo the constitutionality of a criminal sentence. United States v. Barajas-Avalos, 377 F.3d 1040, 1060 (9th Cir.2004), cert. denied, 543 U.S. 1188, 125 S.Ct. 1396, 161 L.Ed.2d 192 (2005).
DISCUSSION
A. Sufficient evidence supports the convictions of robbery and using a firearm.
Defendant argues, first, that there was insufficient evidence to support her convictions stemming from the armed robberies of Magoo’s, Second Shift, Winner’s Circle, and Joker’s Wild and thus that the district court erred when it denied her Rule 29 motion. We are not persuaded.
The jury convicted Defendant of the conspiracy charge, a conviction that she does not challenge on appeal. In Pinkerton v. United States, 328 U.S. 640, 646-47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the Supreme Court addressed a factual situation similar to the one at hand. In that case, the defendant brothers, Daniel and Walter, were convicted of conspiring to violate the Internal Revenue Code and also of substantive violations of the Code. There was no evidence that Daniel had participated directly in the commission of the substantive offenses, yet the Court upheld his convictions on those charges as well as on the conspiracy count. The Court did so because there was a “continuous conspiracy” and “no evidence of the affirmative action on the part of Daniel which is necessary to establish his withdrawal from it.” Id. at 646, 66 S.Ct. 1180. “And so long as the partnership in crime continues, the partners act for each other in carrying it forward.” Id.
As noted, Defendant does not challenge the sufficiency of the evidence underlying her conspiracy conviction. She conspired with Canfield to commit the whole series of armed robberies, in a continuous sequence. There is no evidence that Defen *1117 dant took any affirmative act to withdraw from the ongoing conspiracy before the four robberies in question occurred. To the contrary, she continued to accept and spend the proceeds of all the robberies and worked purposefully to conceal the crimes. She helped actively to plan the Butte robbery. Accordingly, there is sufficient evidence to support the challenged convictions under the conspiracy liability doctrine of Pinkerton.
Alternatively, and additionally, the record contains sufficient evidence to support Defendant’s convictions under an aiding and abetting theory of liability in violation of 18 U.S.C. § 2(a). To aid and abet another to commit a crime, it is necessary that a defendant “in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.” Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (internal quotation marks omitted). Defendant helped to plan the robberies, she scouted potential targets, she had knowledge that her co-conspirator was carrying out the robberies, and she willingly accepted the proceeds of each of the crimes. For this reason, too, sufficient evidence supports the disputed convictions.
B. Title 18 U.S.C. § 921t(c)(l) is not unconstitutionally vague.
The jury convicted Defendant of seven counts of knowingly using or carrying a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (c)(2). The statute states, in pertinent part:
[A]ny person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ...—
(i) be sentenced to a term of imprisonment of not less than 5 years[.]
Id. § 924(c)(1)(A)®.
In the case of a second or subsequent conviction under this subsection, the person shall—
(i) be sentenced to a term of imprisonment of not less than 25 years[.]
Id. § 924(c)(1)(C)®.
Notwithstanding any other provision of law—
(ü) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.
Id. § 924(c)(l)(D)(ii). Pursuant to the statute, the district court sentenced Defendant to five years for her first firearm conviction and 25 years for each of the other six firearm convictions, to run consecutively.
Defendant urges us to find that the statute is unconstitutionally vague. She argues that, because the statute specifies that 25-year terms are to be imposed for “second or subsequent” convictions but not for “each” subsequent conviction, she could not have known that she would be sentenced to multiple 25-year minimum sentences.
A statute is void for vagueness when it fails to give “adequate notice to people of ordinary intelligence of what conduct is prohibited, or if it invites arbitrary and discriminatory enforcement.” United States v. Tobacca, 924 F.2d 906, 912 (9th Cir.1991) (emphasis added). Defendant does not argue that she was unaware that *1118 the use of a firearm in relation to robbery is prohibited by § 924. Rather, she claims only that the statute failed to warn her of the potentially draconian penalty for committing multiple armed robberies.[1]
Even assuming that a vagueness argument focused exclusively on sentencing, rather than on criminal conduct giving rise to the sentence, is cognizable, the statute is not vague. The Supreme Court has interpreted the meaning of § 924. Deal v. United States, 508 U.S. 129, 137, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). Its terms are readily understandable. Its mandatory nature, whatever its merits or demerits as a policy matter, invites uniform enforcement, rather than arbitrary or discriminatory enforcement. See, e.g., id. (upholding multiple, consecutive, lengthy sentences under § 924); United States v. Angelos, 433 F.3d 738, 754 (10th Cir.2006) (same), petition for cert. filed, 75 U.S.L.W. 3034 (U.S. July 3, 2006) (No. 06-26); United States v. Camps, 32 F.3d 102, 109 (4th Cir.1994) (same). A plain reading of the statute reveals no ambiguity, as this consistent precedent recognizes.
C. The sentence violates neither the Fifth nor the Eighth Amendment.
Finally, Defendant brings two constitutional claims. She argues that the mandatory minimum sentence established by § 924 violates the Fifth Amendment’s guarantee of due process by removing discretion from the judiciary and placing it in the hands of the prosecutor. We already have rejected the argument that mandatory minimum sentences established by statute violate due process. United States v. Wilkins, 911 F.2d 337, 339 (9th Cir.1990). The Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), does not change that rule. United States v. Dare, 425 F.3d 634, 643 (9th Cir.2005), cert. denied, - U.S. -, 126 S.Ct. 2959, - L.Ed.2d -(2006).
Finally, Defendant argues that the Eighth Amendment precludes the lengthy consecutive mandatory minimum sentences imposed here under § 924. This argument also is directly precluded by our precedent. United States v. Parker. 241 F.3d 1114, 1117 (9th Cir.2001).
AFFIRMED.

. Defendant challenges only four of the § 924 counts, so she does not dispute 55 years of the mandatory sentence.