**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

THOMAS MICHAEL WHITEHEAD,
    *Defendant-Appellee.*

No. 05-50458

D.C. No.
CR-03-00053-
CAS-1

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

THOMAS MICHAEL WHITEHEAD,
    *Defendant-Appellant.*

No. 05-50506

D.C. No.
CR-03-00053-
CAS-1

ORDER

Filed March 11, 2009

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and Jay S. Bybee, Circuit Judges.

Order;
Dissent by Judge Gould;
Dissent by Judge Reinhardt

## ORDER

A majority of eligible judges has voted against rehearing en banc. The petition for rehearing and rehearing en banc is denied. Fed. R. App. P. 35, 40.

GOULD, Circuit Judge with whom KLEINFELD, BYBEE, CALLAHAN, and BEA Circuit Judges, join dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc in this case.

The problem is simply that the desirable principle of deference to the sentencing judge, if taken too far, is transformed into an undesirable principle of no review in effect for substantive reasonableness of a sentence, contrary to what the Supreme Court declared as law. I believe that while *Gall v. United States*, 128 S. Ct. 586 (2007) reinforced district judges' considerable discretion in sentencing, it left appellate judges with the task of reviewing sentences for reasonableness, and that review must be more than the mere recitation that the district court knows the facts better than we do, with a citation to *Gall. See United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008).

The scope of our duty to review a district court's sentencing decision for substantive reasonableness under an abuse of discretion standard goes beyond what our court did here, and we would all benefit if we had a better standard for such circumstances. Thomas Whitehead, the defendant in this case, pirated a million dollars worth of "access cards" and sold them to persons who used them to steal DirectTV's television services. He personally garnered more than $400,000 from his involvement in this illegal scheme. Yet despite this serious crime, he got zero jail time. After taking his personal circumstances into account and granting him acceptance of responsibility, even though he went to trial and did not save the government time by pleading guilty, the district judge calculated his guideline range at 33 to 41 months. Nonetheless, the judge sentenced him only to probation, restitution, and community service with no prison term, not a month, not even a day. The sentencing judge gave the following reasons: Whitehead displayed extreme remorse (which, I observe, was

expressed after his conviction). Whitehead had family circumstances that the district court thought warranted leniency, specifically his mother's illness and his position as a parent with joint custody of his daughter. And the district court concluded that there was a low likelihood of recidivism. *Whitehead*, 532 F.3d at 99799. The *Whitehead* per curiam majority was comfortable affirming the sentence rather summarily and hardly needed to justify its affirmance with any analysis of the district court's reasons.

In *Gall v. United States*, the Supreme Court upheld a 36 month probationary sentence as reasonable when the applicable guideline range was a 30 to 37 month custodial sentence. *Gall*, 128 S. Ct. 586. The extent of the variance in *Gall* was substantially the same as in *Whitehead*, but the Supreme Court's reasoning and review of the record was significantly more thorough than in *Whitehead*. In *Gall*, the Supreme Court exhaustively detailed the compelling mitigating evidence of Gall's voluntary withdrawal from a conspiracy to distribute ecstacy and self-motivated rehabilitation—mitigation substantially more compelling than Whitehead's mitigation case. *Whitehead* cites *Gall*, but it does not engage in the same sort of review. The signal fact is that Whitehead expressed remorse *after* his conviction. And, of course, he also had some family obligations, but who doesn't? How do the factors of post-conviction remorse and some family make his case much different from all of the routine convictions where criminal defendants are unhappy that they were caught and convicted and also have fathers, mothers, spouses, or children? How do these mitigating factors warrant such a significant variance? It's hard to believe that the Sentencing Commission was unaware of such circumstances in the mass of cases they reviewed. It looks as if district courts can give a mere wristslap to those convicted of white collar crime, and then await a summary affirmance from our court.

However, it has been recognized for more than two thousand years that: "to spare the guilty is to injure the innocent."

Publius Syrus, Moral Sayings 113 (D. Lyman trans. 1856). Many of those now concerned with victims' rights have recognized the same thing. *See, e.g.*, Crime Victims' Rights Act, 18 U.S.C. § 3771 (2006). Doubtless the district court thought it was sentencing in a just way, and doubtless the *Whitehead* panel majority also thinks it serves justice to affirm. None would dispute the importance of reaching a just result sentence for crime in our criminal justice system. As was well stated by no less a legal luminary than Daniel Webster, at the funeral of Mr. Justice Story, on September 12, 1845: "Justice is the great interest of man on earth. It is the ligament which holds civilized beings and civilized nations together." 2 Papers of Daniel Webster: Legal Papers, 695 (Andrew J. King, ed. 1989). We can accept that the *Whitehead* panel majority and the sentencing district court think Whitehead's sentence was just. But just as surely I conclude that it is unjust for a person who stole so much money to get no jail time. What is needed is some better standard by which in white collar crime cases, where physical injury to the public from the defendant is probably not in the cards, to assess what is an appropriate level of punishment. I do not think it is sufficient merely to defer to district court discretion with unbounded standards.

The *Whitehead* majority concludes that "the district court was 'in a superior position' to find the relevant facts and to 'judge their import.' [It] didn't abuse its discretion in so doing." *Whitehead*, 532 F.3d at 993. Surely it is true that the district court is in a better spot than we normally to consider the facts of a case and to render sentence. Nonetheless, we should provide some standard that would alert a district court to the concern that it should go only so far but not farther. To review for substantive reasonableness in such an undemanding manner, as was undertaken by the per curiam majority in *Whitehead*, undermines the equality goal envisioned by the Guidelines, and embraced by the Court in the remedy portion of *Booker*. *United States v. Booker*, 543 U.S. 220, 250-51, 261-63 (2005).

I share Judge Bybee's valid concern that *Whitehead* will become the "baseline" that we use to measure other sentences. *Whitehead*, 532 F.3d at 999. Indeed, it already has. In *United States v. Ruff*, a panel majority, over my dissent, upheld a one-day custodial sentence, a significant variance from a guideline range of 30 to 37 months, citing the archetype of permissiveness, *Whitehead*. *Ruff*, 535 F.3d at 1002. In that case, Kevin Ruff had stolen more than $600,000 worth of supplies from the Sacred Heart Medical Center and then covered his tracks by entering more than one thousand false downward inventory adjustments in the medical center's computerized log. The district court in *Ruff* cited Ruff's history of employment; his cooperation and remorse; his family support; the absence of risk to the public and the appropriateness of restitution; as well as his mental health issues and gambling addiction for the reasons to vary downward. 535 F.3d at 1001. Again, are these mitigating factors that justify such a lenient sentence?

I ask: Given that Whitehead took more than $1 million and profited by some $400,000, in a calculated fraud, is no jail time warranted? Given that Ruff took more than $600,000 in a calculated fraud, over several years, is spending one day in jail enough? Doubtless our society has a hard time paying for all those imprisoned and doubtless those who aren't imprisoned might have a better chance at generating income to pay victim restitution, but those are not sufficient reasons to rubber-stamp leniency for criminals who are better placed in society than the run-of-the-mill criminals who get a worse deal from the sentencing judges.

This case puts the Ninth Circuit in what I consider to be a conflict with several of our sister circuits who have adopted a more vigorous approach to reviewing sentences for reasonableness. So far as I have been able to determine, the Ninth Circuit has never found a sentence substantively unreasonable after *Gall* in a published opinion. But some other circuits in white collar crime cases have concluded after *Gall* that sen-

tences were unreasonable when they contained significant downward variances. *See, e.g., United States v. Omole*, 523 F.3d 691 (7th Cir. 2008) (reversing a 12 month custodial sentence for a defendar convicted of wire fraud when the guideline range was 87-102 months, and the sentencing judge's explanation did not support a sentence so far below the range); *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008) (reversing a probationary sentence for health care fraud where the Guideline range was 27-33 months).

To give such light sentences for such serious crime is an affront to the premises of our criminal law system which rely in part on punishment serving some purpose of general deterrent. Needless to say, the victims of these crimes could hardly be expected uniformly to endorse a lack of incarceration. Indeed, the Sentencing Commission, with its mandate from Congress to foster uniformity and proportionality in sentencing, has expressed concern that before the Guidelines, "courts sentence[d] to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement . . . ." U.S.S.G. § 1A1.1, Ch. 1, Pt. A.4(d) (2006). Regrettably, *Whitehead* signals that we are returning to that era of inappropriate sentences. Wilful offenders who commit white collar crime, who steal intentionally hundreds of thousands or even millions of dollars, should receive some degree of forced incarceration. We know that often the poor and powerless criminal defendants who commit common larceny or theft will serve some hard time. The public, respecting our legal system, may find it difficult to believe that our abuse of discretion review with deference to trial court sentencing permits us to conclude that persons who steal hundreds of thousands of dollars in intentional schemes over long periods of time will suffer little or no prison time.

I do not mean to sound harsh toward the criminal defendants in white collar crime cases or to our district courts giving light sentences in such cases or to our panels that might

be inclined to affirm them under the panel's view of *Gall*, but the reasons cited by the sentencing judges in *Whitehead* and *Ruff* will exist in most white collar criminal cases. We can hardly be surprised if criminals express remorse after they are caught and are facing the consequences. We can hardly be surprised if a white collar criminal has a good employment history—otherwise, he or she would likely not be in a position to commit the crime. Possibly for that reason, as I mentioned in my *Ruff* dissent, "district courts sentencing white collar criminals can more often identify with the criminal . . . . But, socioeconomic comfort with a criminal convict is not a sufficient reason to show extreme leniency . . . ." *Ruff*, 535 F.3d at 1007 (Gould, J., dissenting).

Many judges will naturally hesitate to step forward with views that might be characterized as being less than merciful to a criminal defendant.[1] I, for one, would not quarrel with any reasonable variance from the advisory guidelines, and disposition towards mercy alone might be enough. But there have to be some limits and for me these limits are transcended when persons who orchestrate massive white collar crimes are given no or virtually no jail time.

If a district court in the Ninth Circuit need only cite one or two of these predictable reasons to allow a white collar criminal to forgo jail time, these white collar criminals generally won't have much jail time. Under 18 U.S.C. § 3553(a), we should be upholding sentences that will reflect the seriousness of the offense, afford adequate deterrence and protect the public. We should not, by inaction and excessive deference, be inviting people to open up shop scamming law-abiding individuals or corporations out of hundreds of thousands or even millions of dollars, and then accepting that if on conviction

---

[1]We have it on the good authority of Cicero: "Nothing is more praiseworthy and nothing more befitting a great and eminent [person] than placability and clemency." Cicero, *De officiis* in The Ethical Writings of Cicero, 55 (Andrew P. Peabody trans. 1887).

they say that they are sorry, they need not serve any jail time. Thomas Whitehead is no Charles Ponzi, but still to affirm a sentence that gives a total pass from jail time is unwise.

---

REINHARDT, Circuit Judge, dissenting from the denial of rehearing en banc:

We should have taken this case en banc for the reasons set forth in Section II.A of Judge Bybee's dissent. *United States v. Whitehead*, 532 F.3d 991, 994-96 (9th Cir. 2008). Although, in my view, the result reached in *Whitehead* was not necessarily erroneous, the cursory nature of the review in which the majority engaged surely was. The majority's superficial opinion reflects a fundamental misunderstanding of our responsibility as appellate judges to conduct a *serious* examination of the sentencing decisions of district courts and to reverse those sentences if they do not meet the standard of "substantive reasonableness." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

I regret that Judge Gould has chosen to limit his complaint to the sentencing of white collar criminals and that he emphasizes a need for an increase in the length of sentences, if only in their case. The problem with our sentencing policies these days is quite the opposite: the sentences we impose are far too harsh. Those harsh penalties fall all too often on the "poor and powerless." Dissent from Denial of Rehearing at 3130. Some of the sentences federal courts impose are, indeed, both absurd and inhumane. A fairly recent example is the sentence handed down in *United States v. Hungerford*, 465 F.3d 1113 (9th Cir. 2006), a case in which we were compelled, on account of our mandatory minimum sentencing regime (and some unconscionable prosecutorial charging decisions) to affirm "an immensely cruel, if not barbaric, 159-year sentence [of] a severely mentally disturbed person who played a limited and fairly passive role in several robberies during which

no one was physically harmed." She was in addition a 52-year-old first offender. *Id.* at 1119, 1120 (Reinhardt, J., concurring in the judgment). A one hundred and fifty-nine year sentence?? The solution to our sentencing problem is, in my view, to treat all defendants fairly, white collar and otherwise. To that end, I am less concerned with our occasional deference to lenient district court sentencing decisions than with our continuing obligation to ensure that sentences are not unreasonably severe.

Appellate judges must play an important, though deferential, role in achieving this goal. I recognize that our ability to do so is limited not only by the deference we must show to sentencing judges but by the harsh sentencing policies Congress has adopted, especially with respect to mandatory minimum sentences. Still, district judges remain free in most cases to follow the statutory principles Congress has established, and to impose a sentence that is "sufficient, but not greater than necessary," taking into account, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553. The Supreme Court has ruled, and fairness demands, that we must conduct a serious review of the sentences imposed by district judges to ensure that they are reasonable. We abdicate our responsibility when we fail to do so — whoever the defendant may be, and whatever the crime.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.