**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JESSE JAMES JIMISON,
*Defendant-Appellant.*

No. 06-30417

D.C. No.
CR-05-00091-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
April 12, 2007—Seattle, Washington

Filed July 16, 2007

Before: Alex Kozinski and Raymond C. Fisher,
Circuit Judges, and Andrew J. Guilford,* District Judge.

Opinion by Judge Kozinski

---

*The Honorable Andrew J. Guilford, United States District Judge for
the Central District of California, sitting by designation.

## COUNSEL

David A. Merchant, Assistant Federal Defender, and Anthony R. Gallagher, Chief Federal Defender, Billings, Montana, for the defendant-appellant.

Eric B. Wolff, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider when a defendant can be subject to a sentencing enhancement under U.S.S.G. § 2K2.1(b)(5) (2005),[1] for possessing a firearm in connection with an offense that he never commits.

### Facts

Jesse Jimison beat up his girlfriend and then fled in her car. He then became ill from drugs he had taken, stumbled into an unlocked ranch house and passed out. When he woke up, he grabbed up a couple of guns, gun accessories and clothes and continued his flight. He ended up at the house of Bill Hecker, an acquaintance. Jimison was crying and told Hecker that he had been on the run from the police and thought that he had just killed his girlfriend. Jimison then continued to act erratically. He told Hecker "something about he was going to go Rambo," and called the owner of the ranch house, apologizing for taking his guns and promised to return them. He then locked the stolen guns in the trunk of his girlfriend's car and departed in a friend's car, leaving the guns safely behind.

Jimison pled guilty to felony possession of firearms. The district court enhanced his sentence under section 2K2.1(b)(5), finding that Jimison possessed the stolen guns "with the intent of fighting it out with law enforcement if he were caught." Jimison now appeals.

### Analysis

[1] A defendant is subject to a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(5), if he "possessed

---

[1]In the most recent version of the Guidelines, this section has been repaginated as U.S.S.G. § 2K2.1(b)(6).

or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." A "felony offense" is "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 cmt. n.4.[2] There is no dispute that shooting at police is a felony offense—the issue is whether there was sufficient evidence about Jimison's intent to justify imposing this enhancement.

[2] We have never considered what constitutes proof that a defendant had "knowledge, intent, or reason to believe" that he would, at some time in the future, commit "another felony offense." We hold that while the defendant need not actually commit the crime, *see United States* v. *Dodge*, 61 F.3d 142, 146 (2d Cir. 1995), the government must produce sufficient evidence that he intended to "use[ ] or possess[ ]" firearms "in connection with" a specifically contemplated felony.[3] The plan to commit the felony need not be fully developed. Thus if a defendant acquires a gun intending to use it in a bank robbery, he need not have cased the location or even identified a specific bank that he plans to rob. But he must have formed a firm intent to use the gun for a felonious purpose.

[3] Here, the district court found that "this defendant stole these gun[s], at least at that time, with the intent of fighting it out with law enforcement if he were caught." The government must show more than the fact that a defendant stole guns to obtain a section 2K2.1(b)(5) enhancement. *See United States* v. *Routon*, 25 F.3d 815, 819 (9th Cir. 1994) (the gov-

---

[2]Now U.S.S.G. § 2K2.1 cmt. n.14(C).

[3]We don't decide what the defendant must know or believe if he sells guns to third parties who could commit felony offenses. *See, e.g.*, *United States* v. *Molloy*, 324 F.3d 35, 38-40 (1st Cir. 2003); *United States* v. *Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003).

ernment must show more "than a defendant's mere possession of a firearm" to get this enhancement).[4]

**[4]** The only direct evidence that Jimison stole the guns with a felonious purpose was Hecker's testimony that Jimison "said something about he was going to go Rambo." Taking Hecker's vague recollection at face value and assuming that "going Rambo" implies turning to gun violence, Jimison's offhand comment lacks sufficient specificity to establish that he formed a firm intent to shoot it out with police. Most of us make empty statements out of frustration from time to time— a parent learns that his kid got into trouble again and exhales, "I'm going to wring his neck"; a driver gets cut off in traffic and yells out the window, "I'll beat you to a bloody pulp"; one of the *12 Angry Men* screams "I'll kill him."[5] These exclamations are part of our everyday parlance and don't generally connote any intent to commit violence. This is especially true when the statement is made as a result of agitation or emotional distress, as was the case here. Suppose a husband learns that his wife has been cheating on him and blurts out that, if he sees the paramour, he will "blow her head off." Without further evidence, we wouldn't consider this comment sufficient to conclude that the husband formed a firm intent to harm the home-wrecker.

---

[4]After November 2006, the Guidelines provide that this enhancement applies "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." U.S.S.G. § 2K2.1 cmt. n.14(B). Because this comment was added after Jimison stole the guns, it is questionable whether it would apply here. *See United States* v. *Stevens*, 462 F.3d 1169, 1171 (9th Cir. 2006). In any case, the district court didn't impose the enhancement on this basis and the government has waived any argument that this comment applies retroactively.

[5] *Juror #3*: I'll kill him! I'LL KILL HIM.

   *Juror #8*: You don't *really* mean you'll kill me, do you?

*12 Angry Men* (Orion-Nova Productions 1957), *available at* http://us.imdb.com/title/tt0050083/quotes.

**[5]** Jimison's "Rambo" statement was of the same character. Hecker provided no context for the statement; he did not indicate that it was made as part of a discussion of Jimison's plans for the future. Indeed, the statement left so little impact on Hecker that he had difficulty recalling exactly what Jimison said. This is not sufficient to establish that Jimison had a firm intent to have a shootout with the police. As far as the record reflects, Jimison's statement was nothing more than a scared and confused individual's voicing of his fear through bluster.

The Tenth Circuit confronted a similar situation in *United States* v. *Pantelakis*, 58 F.3d 567 (10th Cir. 1995). There, the defendant owned a gun and told a probation officer that "he considered himself a threat to rival gang members." *Id.* at 568. The Tenth Circuit explained that the district court erroneously imposed the section 2K2.1(b)(5) enhancement because "[t]his statement, in and of itself, is simply insufficient to prove that [defendant] had reason to know that he would use a gun to commit a felony, much less to show actual intent or knowledge that a felony would be committed. At most, this is an example of braggadocio by an eighteen-year-old gang member." *Id.*

**[6]** In adopting this enhancement, the Sentencing Commission was concerned about criminals using (or plotting to use) firearms "in connection with" specifically contemplated crimes. *See, e.g.*, *Dodge*, 61 F.3d at 144 (KKK member bought a pistol with a silencer as well as a pipe bomb with a timer so that he could have his "alibi all set up"); *United States* v. *Payton*, 198 F.3d 980, 983 (7th Cir. 1999) (defendant planned to use a shotgun in a robbery of a pawn shop, and had planned out the robbery in detail). We don't believe that the Sentencing Commission meant to impose this four-level enhancement, the same as the punishment for being a leader or organizer of a criminal conspiracy, on defendants who happened to make statements out of frustration, fear or grandstanding. *See United States* v. *Sanders*, 162 F.3d 396,

401 (6th Cir. 1998) (comparing section 2K2.1(b)(5) to U.S.S.G. § 3B1.1(a)).

**[7]** Moving past the "Rambo" comment, the rest of the evidence demonstrates that Jimison acted just as the Sentencing Commission doubtless hoped he would when it adopted this enhancement. Soon after arriving at Hecker's house, Jimison called the owner of guns, apologized and made arrangements to return them. He also safely locked the guns in the trunk of the car and departed, leaving the car and guns at Hecker's house. Under these circumstances, there was insufficient evidence to conclude that Jimison formed a firm intent to have a shootout with law enforcement. Accordingly, we conclude that the district court erred in applying the Guidelines to the facts of this case and vacate defendant's sentence.[6]

## REVERSED and REMANDED.

---

[6]We recognize that there is an intracircuit conflict regarding how we review application of the Guidelines to the facts. *Compare United States* v. *Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005) ("This court reviews . . . the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion."), *with United States* v. *Williamson*, 439 F.3d 1125, 1137 n.12 (9th Cir. 2006) ("We review the interpretation and application of the Guidelines de novo."); *see also United States* v. *Staten*, 466 F.3d 708, 713 n.3 (9th Cir. 2006) (recognizing the conflict). But because we would reverse even under the more deferential abuse of discretion standard, it is unnecessary for us to call this case en banc to resolve the conflict.