**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

VINCENT NICHOLAS
PETRUSHKIN, AKA Vincint
Petrushkin, AKA Vincent Petrushkin,

*Defendant - Appellant.*

No. 23-572

D.C. No.
2:21-cr-00164-
TOR-2

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted September 11, 2024
Seattle, Washington

Filed July 14, 2025

Before: William A. Fletcher and Jennifer Sung, Circuit
Judges, and Jed S. Rakoff, District Judge.[*]

Opinion by Judge Sung

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated the sentence imposed on Vincent Petrushkin in a case in which Petrushkin pled guilty to possession of a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and remanded for resentencing.

On appeal, Petrushkin challenged the district court's application of an enhancement pursuant to U.S.S.G. § 2K2.1(c)(1), a cross-reference provision that allows courts to apply the base level and special offense characteristics from another substantive offense "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense."

The panel held that the appeal waiver in Petrushkin's plea agreement allowing him to "appeal only the reasonableness of his sentence" did not waive his right to appeal the district court's application of the (c)(1) enhancement.

The panel held that the "potentially emboldened or facilitated" requirement set forth in *United States v. Routon*, 25 F.3d 815 (9th Cir. 1994) (concerning U.S.S.G. § 2K2.1(6)(b)(B)), applies to both clauses of § 2K2.1(c)(1).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The government must show that the defendant possessed the firearm in a manner that potentially emboldened or facilitated the other offense.

Applying that standard to this case in which the other offense was committed not by Petrushkin but by his codefendant Randy Holmes, the panel held that the district court's use of (c)(1) was an abuse of discretion because the district court, which focused solely on Petrushkin's knowledge that Holmes was going to commit a robbery, did not find that Petrushkin possessed the firearm in a manner that potentially emboldened or facilitated Holmes's offense. Nor do the facts in the record permit the necessary inference.

## COUNSEL

Ian L. Garriques (argued), Assistant United States Attorney; Caitlin A. Baunsgard, Attorney; Vanessa R. Waldref, United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

Zachary L. Ayers (argued), Ayers Law Firm PLLC, Spokane, Washington, for Defendant-Appellant.

**OPINION**

SUNG, Circuit Judge:

The question presented in this case is whether mere possession of a firearm is sufficient to trigger the application of United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(c)(1). We hold that it is not, and we vacate and remand for resentencing.

## I.  FACTUAL BACKGROUND

Randy Holmes told a confidential informant for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that he needed a gun to conduct a robbery, and ATF set up a sting firearm transaction at a Motel 6 in Spokane on November 5, 2021. Holmes drove to the Motel 6 with William Burns and Vincent Petrushkin (the defendant here). Petrushkin believed that they would rob someone at the Motel 6 but did not know about Holmes's plan to obtain a gun to conduct future robberies. At the Motel 6, Holmes told Burns and Petrushkin that he was "gonna do this by myself homie" and rejected their offers of help. Burns then gave Holmes a Glock Model 17 9mm semi-automatic handgun. After Burns transferred the gun to Holmes, Petrushkin asked if he could see the gun. Petrushkin "held the gun, looked at it and said hell yeah," handed the gun back to Holmes, and got into the backseat of the car. Petrushkin possessed the gun for approximately five seconds.

Holmes then entered the undercover ATF agent's car, pointed the Glock at the agent's head, and demanded a firearm. When the agent told him it was in the back of the car, Holmes exited the vehicle to locate the firearm. The agent got out of the car and told Holmes to drop his weapon.

Holmes shot the agent multiple times, wounding him. Burns and Petrushkin left the scene when the shooting began.

Petrushkin was arrested and charged with possession of a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pled guilty and agreed to waive his right to appeal his conviction and sentence if the term of incarceration imposed was less than 12 months and one day. If the court imposed a higher sentence, he reserved the right to appeal "only the reasonableness of his sentence."

Petrushkin's plea agreement with the government recommended a four-level increase to his base offense level under U.S.S.G. § 2K2.1(b)(6)(B). The (b)(6)(B) enhancement applies when a defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).

At sentencing, the district court applied a different sentencing enhancement, U.S.S.G. § 2K2.1(c)(1), over Petrushkin's objection. Section 2K2.1(c)(1) allows courts to apply the base offense level and special offense characteristics from another substantive offense "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense." U.S.S.G. § 2K2.1(c)(1). Applying the (c)(1) enhancement, the district court used the robbery base offense level as the starting point for Petrushkin's Sentencing Guidelines

calculation, resulting in a Guidelines range of 110 to 120 months. In the alternative, the court applied the (b)(6)(B) enhancement and calculated a 77 to 96-month Guideline range. Consistent with the plea agreement, the government requested a sentence of 12 months and one day. The defense requested a sentence of time served, plus ten to twenty days to allow Petrushkin to finalize a community reentry plan. The court sentenced Petrushkin to 48 months in prison and three years of supervised release, and Petrushkin timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we vacate the sentence and remand for resentencing.

## II.  DISCUSSION

### A.  Scope of Appeal Waiver

To begin, we must determine whether Petrushkin waived his right to appeal the district court's application of the (c)(1) enhancement when calculating his Guidelines range. Petrushkin's plea agreement included an appeal waiver that allowed him to "appeal only the reasonableness of his sentence." The government argues that the calculation of a Guidelines range implicates only procedural reasonableness, and that Petrushkin's plea agreement allows him to challenge only the substantive reasonableness of his sentence. We review a defendant's waiver of his right to appeal de novo, *United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007), and we reject the government's argument for two reasons.

First, the calculation of a defendant's Guidelines range implicates both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (calculating the incorrect Guidelines range constitutes procedural error); *United States v. Carty*, 520 F.3d 984, 993

(9th Cir. 2008) (en banc) (instructing courts to "consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range" when evaluating substantive reasonableness).

Second, even if the correct application of the Guidelines were strictly a matter of procedural reasonableness, the government's argument would fail because Petrushkin's plea agreement allows him to appeal the "reasonableness" of his sentence without any express limitation. That is, the plea agreement does not say that Petrushkin may appeal only the substantive reasonableness of his sentence, nor does it delineate between procedural and substantive review. The reference to "reasonableness," without limitation, plainly incorporates both the procedural and substantive aspects of reasonableness. And even if the scope of the carve-out in the appeal waiver were ambiguous, we would construe that ambiguity against the government. *See United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016) (noting that because courts "construe plea agreements according to the principles of contract law . . . any ambiguities in the contract language are construed against the drafter, which in this case is the government"). Because Petrushkin's plea agreement allows him to challenge the district court's Guidelines calculation, we turn to the merits of his argument that the district court erred when it applied the (c)(1) enhancement to his sentence.

## B. Application of U.S.S.G. § 2K2.1(c)(1)

We review the district court's legal interpretation of the Sentencing Guidelines de novo. *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007). We review the district court's application of the Guidelines to the facts for abuse of discretion. *Id.*

Section 2K2.1(c)(1) is a cross-reference provision: it allows a defendant charged with one crime to be sentenced under the Guideline for a different crime under specified circumstances. Here, Petrushkin was charged with unlawful possession of a firearm. Under § 2K2.1(c)(1), a defendant can be sentenced according to the Guidelines framework for another offense (instead of possession), if he either 1) possessed the firearm "in connection with the commission or attempted commission of another offense," or 2) possessed the firearm "with knowledge or intent that it would be used or possessed in connection with another offense." U.S.S.G. § 2K2.1(c)(1).[1] We address both clauses because the district court did not specify which clause it relied upon to apply the enhancement.

"We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). "As with the interpretation of legal texts generally, our search for the Sentencing Commission's intent will most often begin and end with the text and structure of the Guidelines." *United States v. Joey*, 845 F.3d 1291, 1297 n.8 (9th Cir. 2017) (internal citation and quotation marks omitted). We also consider the Sentencing

---

[1] U.S.S.G. § 2K2.1(c)(1) also applies to the use and transfer of firearms, but the government does not argue that Petrushkin used or transferred the Glock. We therefore limit our analysis to whether Petrushkin possessed a firearm for purposes of the § 2K2.1(c)(1) provision.

Commission's "commentary interpreting or explaining the text." *Martinez*, 870 F.3d at 1166.

The Guidelines commentary does not define "possessed" for purposes of the (c)(1) enhancement. There is, however, precedent that informs our analysis. Namely, in *United States v. Routon*, 25 F.3d 815 (9th Cir. 1994), we interpreted another guideline, U.S.S.G § 2K2.1(b)(6)(B), which is very similar to § 2K2.1(c)(1).[2] In relevant part, both (b)(6)(B) and (c)(1) have two clauses, the first of which addresses possession of a firearm "in connection with another offense," and the second of which addresses possession of a firearm with knowledge or intent that it would be "used or possessed in connection with" another offense.[3] In *Routon*, we construed the first clause of (b)(6)(B), and we held that a defendant does not "possess a firearm in connection with another offense" under (b)(6)(B) unless the defendant possesses the firearm "in a manner that permits an inference that it facilitated or potentially facilitated—*i.e.*, had some potential emboldening role in—a defendant's felonious

---

[2] At the time *Routon* was decided, the language it construed was codified as U.S.S.G § 2K2.1(b)(5), but it was later moved to U.S.S.G § 2K2.1(b)(6)(B).

[3] *Compare* U.S.S.G § 2K2.1(b)(6)(B) ("If the defendant… used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense") *with* U.S.S.G § 2K2.1(c)(1) ("If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense").

conduct." *Id.* at 819. For simplicity, we refer to this holding as the "potentially emboldened or facilitated" requirement.

The question here is whether *Routon*'s standard for "possession" also applies to (c)(1)'s first and second clauses. Petrushkin argues that "possession" must have the same meaning in all three contexts: the first clause of (b)(6)(B), the first clause of (c)(1), and the second clause of (c)(1). The government does not address the interpretive issue in its briefing. Instead, the government assumes that Petrushkin's interpretation of (c)(1) is correct but argues that the record evidence shows that Petrushkin's possession of the firearm potentially emboldened or facilitated Holmes's robbery. We begin by explaining why we agree with Petrushkin that the *Routon* standard applies to both clauses of (c)(1). Then, we explain why we agree with Petrushkin that the record does not support the application of (c)(1) here.

### 1.  Defining "Possession" in § 2K2.1(c)(1)

We begin with § 2K2.1(c)(1)'s first clause, which is virtually identical to the first clause of (b)(6)(B) (then b(5)) construed in *Routon*. *Compare* U.S.S.G. § 2K2.1(c)(1) ("defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense") *with Routon*, 25 F.3d at 817 ("used or possessed any firearm or ammunition in connection with another felony offense"). Although the government declined to expressly concede this point, it does not meaningfully dispute that *Routon*'s interpretation of the first clause of (b)(6)(B) must apply with equal force to the first clause of (c)(1). The government certainly does not offer any reason why it should not. Given the materially identical text of each clause, we have no trouble concluding that *Routon* squarely controls our

interpretation of the first clause of U.S.S.G. § 2K2.1(c)(1) and requires that when a defendant "use[s] or possesse[s] any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," the government must show that the defendant possessed the firearm in a manner that potentially emboldened or facilitated the other offense.

Because the second clause of U.S.S.G. § 2K2.1(c)(1) is not as textually similar, it presents a closer question. The second clause applies when a defendant "possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense." *See* U.S.S.G. § 2K2.1(c)(1). There are two plausible readings of this clause. Under one reading, a defendant's mere possession of a firearm is enough to trigger the enhancement if the defendant had "knowledge or intent" that the firearm would be used in connection with another offense. Alternatively, if the *Routon* standard applies, a defendant must also possess the firearm "in a manner that permits an inference that it facilitated or potentially facilitated—*i.e.* had some potential emboldening role in—a defendant's felonious conduct." 25 F.3d at 819.

In the typical (b)(6)(B) or (c)(1) case, the difference between these readings is not at issue because the enhancement is applied only when *the defendant* possessed a firearm with knowledge or intent that he (i.e., *the same defendant*) would use or possess the firearm "in connection with another offense." *See, e.g.*, *Routon*, 25 F.3d at 819 ("[The defendant's] apparent efforts to maintain the accessibility of his gun whenever he used his car permit the inference that the gun emboldened him to continue his illegal conduct."); *United States v. Collins*, 90 F.3d 1420, 1430 (9th

Cir. 1996) ("[The defendant] carried a loaded pistol during a nighttime burglary."); *United States v. Polanco*, 93 F.3d 555, 567 (9th Cir. 1996) (The "presence of the gun in [defendant's] car potentially emboldened him to undertake his illicit drug sales, since it afforded him a ready means of compelling payment or of defending the cash and drugs stored in the car."); *United States v. Valenzuela*, 495 F.3d 1127, 1135 (9th Cir. 2007) (The defendant "had the pistol grip shotgun underneath his seat, within ready reach. With the shotgun in this location, the district court could reasonably find that the shotgun emboldened his possession of the stolen property.").

In such typical cases, the two plausible readings of (c)(1) lead to the same result because we can clearly infer that a defendant's possession of a firearm with knowledge or intent that it would be used in connection with his own planned offense also potentially emboldened or facilitated his own offense. But here, the case is complicated by the undisputed fact that Petrushkin at most possessed a firearm with knowledge that someone else—Holmes—would use or possess the firearm in connection with another offense. Unlike in our prior cases, Petrushkin's physical possession of a firearm with knowledge or intent that it would be used in another offense doesn't readily support the inference that his act of possessing the firearm potentially emboldened or facilitated the criminal offense of *another* defendant. In other words, it is only because of this case's unusual facts that the different readings of (c)(1) could lead to different outcomes. We therefore must determine whether Petrushkin's act of possession itself must have potentially emboldened or facilitated Holmes's robbery or whether mere possession with knowledge is sufficient.

*Routon* alone does not compel us to incorporate its standard for possession into (c)(1)'s second clause.[4] But *Routon* is not the only relevant precedent. In *United States v. Jimison*, we construed the sentencing enhancement that is now codified in the second clause of (b)(6)(B) and applies when a defendant "possesse[s] or transfer[s] any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." 493 F.3d 1148, 1149 (9th Cir. 2007); U.S.S.G. § 2K2.1(b)(6)(B). That language is materially identical to the second clause of the (c)(1) enhancement at issue here.

In *Jimison*, the defendant "stumbled into an unlocked ranch house and passed out. When he woke up, he grabbed up a couple of guns, gun accessories and clothes and continued his flight." *Id.* at 1149. Jimison acted "erratically" and told a witness that "he had been on the run from the police" and he "'was going to go Rambo'" before "apologizing for taking [the] guns," "promis[ing] to return them," and "lock[ing] the stolen guns in the trunk of his

---

[4] In concluding that mere possession is insufficient, *Routon* arguably relied at least in part on the phrase "in connection with another offense" when concluding that the (b)(6)(B) enhancement requires more than mere possession. 25 F.3d at 819. In *Valenzuela*, however, we described *Routon* as defining the term "possession" itself and "[holding] that possession requires 'that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated—*i.e.*, had some potential emboldening role in—a defendant's felonious conduct.'" 495 F.3d at 1131 (quoting *Routon*, 25 F.3d at 819). *Valenzuela*'s characterization of *Routon* as defining the term "possession" itself supports Petrushkin's reading of (c)(1)'s second clause. And we are arguably bound by *Valenzuela*'s characterization of *Routon*, even though *Routon* could be read differently. We do not need to resolve the effect of *Valenzuela* on this case because, even assuming we are not bound, we conclude that Petrushkin's reading is correct for other reasons.

girlfriend's car and depart[ing] in a friend's car, leaving the guns safely behind." *Id.* Based on these facts, the district court found that "Jimison possessed the stolen guns 'with the intent of fighting it out with law enforcement if he were caught'" and concluded that the four-level enhancement now codified as (b)(6)(B) was applicable. *Id.*

On appeal, there was no dispute that Jimison unlawfully possessed firearms and "that shooting at police is a felony offense—the issue [was] whether there was sufficient evidence about Jimison's intent to justify imposing [the (b)(6)(B)] enhancement." *Id.* To answer that question, we needed to decide "what constitutes proof that a defendant had 'knowledge, intent, or reason to believe' that he would, at some time in the future, commit 'another felony offense.'" *Id.* We held that "the government must produce sufficient evidence that [the defendant] intended to use or possess firearms in connection with a specifically contemplated felony." *Id.* (cleaned up). While "the plan to commit the felony need not be fully developed," a defendant "must have formed a firm intent to use the gun for a felonious purpose." *Id.* That is, we imposed two narrowing constructions on (b)(6)(B)'s second clause: the other felony offense needed to be "specifically contemplated" and the intent needed to be "firm." Applying that narrowed standard, we held that even assuming Jimison's comments about "'going Rambo' implie[d] turning to gun violence," those comments "lack[ed] sufficient specificity to establish that he formed a firm intent to shoot it out with police." *Id.* at 1150.

Notably, we explained that we construed (b)(6)(B)'s second clause narrowly because we did not "believe that the Sentencing Commission meant to impose this four-level enhancement, the same as the punishment for being a leader or organizer of a criminal conspiracy, on defendants who

happened to make statements out of frustration, fear or grandstanding." *Id.* at 1150-51. Like the *Jimison* court, we must choose between a broad reading of a sentencing enhancement that would encompass even the most transitory of acts and a narrow reading that better comports with the overall sentencing scheme. We choose the narrower interpretation for similar reasons.

By its terms, the (c)(1) enhancement contemplates an even more serious penalty than the (b)(6)(B) enhancement at issue in *Jimison*. The (b)(6)(B) enhancement increases the base offense level under § 2K2.1 by four, but the (c)(1) enhancement takes a defendant out of § 2K2.1 entirely and sentences him using the Guideline for another substantive offense. Moreover, (c)(1) does so only if "the resulting offense level is greater than" what it otherwise would have been under § 2K2.1. [5] *See* U.S.S.G. § 2K2.1(c)(1)(A). Petrushkin's case illustrates the difference between sentences under (b)(6)(B) and (c)(1): the district court's alternative Guidelines calculation, which applied (b)(6)(B), was 77 to 96 months. But when applying (c)(1), the Guidelines range was 110 to 120 months. As in *Jimison*, we do not believe that the Sentencing Commission intended for the (c)(1) enhancement, which is greater than "the punishment for being a leader or organizer of a criminal conspiracy," to apply to an act of possession that did not potentially embolden or facilitate another offense. 493 F.3d at 1150-51.

The Sentencing Commission's commentary on the (c)(1) enhancement further supports the narrow reading. The

---

[5] *See* U.S.S.G. § 2K2.1(c)(1)(A) (directing courts to apply the § 2X1.1 cross reference "if the resulting offense level is greater than that determined above").

commentary instructs courts to "consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles." U.S.S.G. § 2K2.1, App. Note 14(E). At oral argument, the government argued generally that the pertinent relevant conduct Guideline, § 1B1.3, supported reading (c)(1) more broadly than (b)(6)(B). We disagree. The relevant conduct Guideline states that in cases of "a jointly undertaken criminal activity," courts must consider "all acts and omissions that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Relevant conduct must meet all three criteria. *Id.* § 1B1.3, App. Note 3. Because an act must further jointly undertaken criminal activity to be considered relevant conduct under U.S.S.G. § 1B1.3, we conclude that the government must show that a defendant possessed a firearm in a manner that potentially emboldened or facilitated another offense for the (c)(1) enhancement to apply.

The "structure of the Guidelines" also supports our interpretation. *Joey*, 845 F.3d at 1297, n.8 (internal quotation marks omitted). Because a (c)(1) enhancement results in a higher Guidelines range than a (b)(6)(B) enhancement, it would undermine two of the overarching purposes of the Guidelines—"the mandate of uniformity and the mandate of proportionality"—to require a lesser showing for (c)(1) than for (b)(6)(B). *See* U.S.S.G. § 1(A)(1)(3); *United States v. Booker*, 543 U.S. 220, 254 (2005) (emphasizing that uniformity "consists . . . of similar relationships between sentences and real conduct").

In sum, we hold that both clauses of U.S.S.G. § 2K2.1(c)(1) require the government to show that a

defendant possessed a firearm that a manner that potentially emboldened or facilitated another offense.

## 2. Applying the *Routon* Standard to Petrushkin's Conduct

The district court abused its discretion when it calculated Petrushkin's Guidelines range using (c)(1) because it did not find that Petrushkin possessed the firearm in a manner that potentially emboldened or facilitated Holmes's offense. The district court found that "it's clear the defendant showed up with two other people, touched the gun, handed the gun to the individual that was going to go rob. Everybody knew they were going to strongarm that individual and steal either his gun or his drugs . . . [Petrushkin] clearly knew when he handed the gun to the other codefendant that it would be used to rob that individual of either a gun or drugs." The district court focused only on Petrushkin's knowledge that Holmes was going to commit a robbery, and it did not find that anything about Petrushkin's act of possession potentially emboldened or facilitated Holmes's robbery. *See United States v. Grimaldo*, 993 F.3d 1077, 1080 (9th Cir. 2021) (vacating and remanding a sentence enhanced under § 2K2.1(b)(6)(B) because "[t]he district court made no findings that [defendant's] firearm made his drug possession more likely"); *United States v. Myers*, 112 F.3d 406, 409 (9th Cir. 1997) (emphasizing that the "application of the cross-reference in [(c)(1)] is *fact dependent*—not automatic").

The government argues that the district court did not err because the record supports a finding that Petrushkin possessed the firearm in a manner that potentially emboldened or facilitated Holmes's offense. We disagree. The record shows that Holmes had already acquired the firearm from Burns and had already decided to use the

firearm to commit the robbery before he handed it to Petrushkin, and Petrushkin possessed it for, at most, five seconds. In *Jimison*, we held that a defendant's erratic statement that he would "go Rambo" was insufficient proof that he had a firm intent to commit another felony offense. 493 F.3d at 1149 (internal quotation marks omitted). That reasoning applies here. Petrushkin's seconds-long physical possession of a firearm, coupled with the ambiguous statement "hell yeah," does not permit the reasonable inference that his act of possession potentially emboldened or facilitated Holmes's subsequent robbery. *See Routon*, 25 F.3d at 819; *cf. United States v. Jones*, 612 F.3d 1040, 1043-44, 1048-49 (8th Cir. 2010) (holding that application of (c)(1) was proper where defendant helped to file the serial number off a firearm, added a strap to the gun, and test-fired it prior to a home invasion robbery, and his co-defendant possessed the firearm during the robbery).

Alternatively, the government argues that the district court did not err because Petrushkin, in his plea agreement, agreed to recommend the application of the (b)(6)(B) enhancement. The government urges us to interpret that stipulation as a factual stipulation that Petrushkin's possession potentially emboldened or facilitated Holmes's robbery. We reject this argument for two reasons. First, the district court has "an independent obligation to ensure that [its] sentence [is] supported by sufficient reliable evidence." *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999). Factual stipulations by the parties should "set forth with meaningful specificity the reasons why the sentencing range resulting from the proposed agreement is appropriate." U.S.S.G. § 6B1.4(a)(3). Here, Petrushkin did not stipulate to any underlying facts that would support a finding that he possessed the firearm in a manner that

potentially emboldened or facilitated Holmes's robbery, nor did the district court make such a finding. Second, a defendant may argue that the district court erroneously applied a Guideline even when he initially agreed to its application at sentencing, particularly when "the record, reasonably read, reflects no knowledge of contrary law—let alone strategic maneuvering." *See Grimaldo*, 993 F.3d at 1082-83 (holding that the court plainly erred when it applied § 2K2.1(b)(6)(B) without making factual findings that the defendant's possession of a firearm emboldened his drug possession, notwithstanding the defendant's agreement at sentencing that the enhancement was legitimate).

## III.   CONCLUSION

The § 2K2.1(c)(1) enhancement applies when a defendant possesses a firearm "in a manner that permits an inference that it facilitated or potentially facilitated . . . felonious conduct." *Routon*, 25 F.3d at 819. The district court did not make a finding that Petrushkin possessed a firearm in a manner that potentially emboldened or facilitated his codefendant's robbery, and the facts in the record do not permit the necessary inference. We therefore vacate the 48-month sentence and remand for resentencing consistent with this opinion.[6]

---

[6] Remand is necessary because the district court did not make sufficient factual findings to support the application of the (c)(1) enhancement or the (b)(6)(B) enhancement, which it relied on in the alternative. Because we agree with Petrushkin that both § 2K2.1(c)(1) and § 2K2.1(b)(6)(B) require more than mere possession, we need not reach his remaining challenges to his sentence.